807 P.2d 1139

**Larry MILLER, Plaintiff Judgment Creditor–Appellee,**

v.

**NATIONAL FRANCHISE SERVICES, INC., Garnishee Defendant–Appellant.**

**No. 1 CA–CV 89–135.**

Court of Appeals of Arizona, Division 1, Department A.

March 14, 1991.

**404**

Levy, Sherwood, Klein and Dudley, P.A. by Gregory J. Meell, Phoenix, for appellee.

Leonard T. Whitfield, Mesa, for appellant.

## OPINION

LANKFORD, Judge.

A garnishee defendant has appealed from the superior court's order denying the garnishee's motion to set aside a default judgment. Appellant presents two issues:

(1) Did the superior court abuse its discretion by declining to set aside a default judgment against a garnishee when the judgment debtor had filed a bankruptcy petition on the same day the default judgment was filed?

(2) Did the superior court err in declining to set aside the default judgment on the ground that the garnishee was confused about the garnishment procedure?

We affirm the superior court's order.

### I.

On April 19, 1988 Larry Miller obtained judgment against Kenneth M. Hollowell and Sherry Hollowell in the amount of $10,000 plus interest and attorney's fees. On June 16, 1988, the judgment creditor, Miller, served a writ of garnishment and summons upon Kenneth Hollowell's employer, National Franchise Services, Inc.

National Franchise failed to answer or otherwise respond to the writ of garnishment. At Miller's instance, the court issued an Order to Show Cause which required National Franchise to appear in court on October 17, 1988. National Franchise failed to appear.

On October 17, 1988, the superior court entered a default judgment in the amount of $8,948.01 against the garnishee defendant, National Franchise. The date stamp of the clerk of the court reveals that this judgment was filed at 9:07 A.M.

On the same day, Mr. and Mrs. Hollowell filed a joint petition for bankruptcy under federal bankruptcy laws. Later that day, National Franchise filed a motion to set aside the default judgment under Rule 60(c), Arizona Rules of Civil Procedure. It argued that the default judgment was void due to the automatic stay provision of federal bankruptcy law, 11 U.S.C. § 362.

Section 362 provides for an automatic stay of all proceedings against bankruptcy petitioners and their property:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of

(1) the commencement ... including the issuance or employment of process, of a judicial, ... or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]

.   .   .   .   .

(4) any act to create, perfect, or enforce any lien against property of the estate ...

The superior court declined to set aside the default judgment, and this appeal followed.

## II.

National Franchise argues that the judgment debtors filed their petition for bankruptcy "at or about the same time" as the entry of the default judgment against it. National Franchise did not inform the superior court of the exact time at which the petition was filed. Nor has it informed this court of the time of filing.

National Franchise nevertheless asserts that the stay is effective because it operates from the *date* of filing of the bankruptcy petition. Therefore, it argues, the filing of the Hollowell's petition for bankruptcy rendered the superior court's judgment void even if the judgment were entered first. This contention that the stay operates from the date of filing the petition rather than from the moment of its filing is the pivotal issue in this appeal.

### A.

■ If National Franchise were correct, the superior court's judgment would yield to the federal statute which bars post-petition action against the bankruptcy estate. Under the Supremacy Clause of Article VI of the United States Constitution, federal bankruptcy law governs when state law conflicts with federal law. *In re Smith–Douglass, Inc.*, 856 F.2d 12 (4th Cir.1988). Moreover, Article I of the Constitution provides that "Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States." *U.S. Const.* art. I, § 8, cl. 4. State laws and actions which are inconsistent with federal bankruptcy law are preempted by the Code. *In re Smith–Douglass, Inc.*, 856 F.2d at 15–16; *In re Claussen*, 118 B.R. 1009, 1014 (Bankr.D.S. D.1990).

The automatic stay bars judicial process from reaching a bankrupt's wages in the hands of his employer. Section 541 of the Bankruptcy Code characterizes property of the estate which is protected by section 362. Under § 541(a)(1) property of the estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." Wages held by the debtor's employer on the date of filing

is "property" subject to § 362. *See In re Dungey*, 99 B.R. 814 (Bankr.S.D.Ohio 1989) (action by creditor to collect garnished wages violated § 362); *In re Carlsen*, 63 B.R. 706 (Bankr.C.D.Cal.1986) (wages held by debtor's employer on the date of filing were property of debtor's estate); *In re Elder*, 12 B.R. 491 (Bankr.M.D.Ga.1981) (garnishee's wages protected by stay provisions of § 362).

A judgment taken in violation of the stay is void. *In re O'Connor*, 42 B.R. 390, 392 (Bankr.E.D.Ark.1984) (citing *In re Posner*, 700 F.2d 1243 (9th Cir.1983)); *Great Southwest Fire Ins. Co. v. Triple "I" Ins. Serv. Inc.*, 151 Ariz. 283, 727 P.2d 336 (1986) (state court judgment entered after the filing of a petition for bankruptcy held void).

### B.

■ The decisive question is when the automatic stay takes effect. If the stay was effective when the superior court entered its judgment—i.e., if the bankruptcy petition was filed first—then the judgment is void.

National Franchise apparently concedes that the judgment was entered first, and instead argues that the automatic stay has a one-day retroactive effect. It contends that the filing of a petition voids judicial action taken the same day. Thus, even if a judgment were rendered first, it is somehow undone by the later filing of a petition in bankruptcy.

This argument is answered by the language of the federal statute. Section 362 provides that the petition "operates as a stay ... of ... the *issuance or employment* of process ..." (Emphasis added). The statutory language is clearly prospective. The statute contains no indication that Congress intended to unravel valid, completed judicial process. The federal bankruptcy stay does not reach into the past to undo a valid state judgment.

The idea that the stay is retroactive also conflicts with congressional policy. The purpose of the automatic stay is to preserve the debtor's estate and to provide a systematic liquidation procedure for all

creditors. *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982). Additionally, in enacting § 362(a), Congress intended to stop collection efforts for antecedent debts. *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir.1987).

Voiding prior judgments would hinder rather than promote the efficient and orderly administration of the bankruptcy estate. *See Great Southwest Fire Ins. Co. v. Triple "I" Ins. Serv. Inc.*, 151 Ariz. 283, 285, 727 P.2d 336, 338 (1986). The moment of filing the petition provides a clear temporal boundary between rights and property obtained by state judicial process and claims to be processed in bankruptcy. Moreover, giving the stay retroactive effect would allow debtors to await the result of a state action by a creditor, and if that result were unfavorable, file a petition in bankruptcy court to undo the judgment. Among other problems, this would encourage the filing of bad faith petitions prohibited by the Code. *See Gonzales*, 830 F.2d at 1035–36 (debtor's filing of bankruptcy petition subject to requirement of good faith). We therefore conclude that when a petition for bankruptcy is filed on the same date as a default judgment, the one filed first prevails.

Both state and federal courts have interpreted the automatic stay provisions of § 362 to operate the *moment* that the petition is filed. *In re Wheeler*, 5 B.R. 600 (Bankr.N.D.Ga.1980); *Northwest Federal Credit Union v. Arens*, 233 Kan. 514, 664 P.2d 811 (1983). *See also* 2 *Collier on Bankruptcy* § 362.04, 362–32 (15th ed. 1979) (section 362 stay becomes operative when a petition is filed).

In *In re Wheeler*, 5 B.R. 600 (Bankr.N.D. Ga.1980), a debtor filed an application to set aside a purported foreclosure on his residence. On May 6, 1980 at 10:34 A.M., the debtor filed a petition for bankruptcy. The creditor had conducted the foreclosure sale at 10:05 A.M. on that date. At approximately 11:45 A.M., the buyer of the residence delivered $35,000 to the creditor's

attorney. In exchange, the buyer received a deed for the residence. The debtor argued that the creditor violated the stay provision because the petition for bankruptcy was filed prior to the foreclosure sale, albeit on the same day.

The United States Bankruptcy Court for the Northern District of Georgia first noted that a petition for bankruptcy does not operate as a stay until it is filed. Thus, the court held that the stay provisions in this case commenced at 10:34 A.M., the moment of filing. *In re Wheeler*, 5 B.R. at 603. Because the foreclosure sale occurred at 10:05 A.M., it did not violate the stay. *Id.* at 604. Although the court held that the creditor's delivery of the deed and acceptance of the check from the buyer at 11:45 A.M. violated the stay and thus was void [1], that fact distinguishes *Wheeler* from the instant case, in which no more remained to be done for the judgment to be fully effective.

## C.

In this case, the record reflects that the default judgment against National Franchise was filed at 9:07 A.M. However, the record fails to show when the Hollowell's petition was filed. National Franchise does not argue that the petition was filed first, and instead vaguely asserts that it was filed "at or about the same time" as the hearing on appellee's motion to show cause. The superior court entered the default judgment following this hearing.

The movant generally bears the burden of demonstrating his entitlement to have a default judgment set aside. *See Webb v. Erickson*, 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982). Here, it was National Franchise's obligation to show that the Hollowells filed their petition for bankruptcy prior to the entry of the default judgment. National presented no evidence of the time at which the petition had been filed, and thus failed to sustain its burden of showing its right to relief.

---

**1.** Consequently, the court held that the buyer had only a "right to enforce a contract" subject

to the debtor's "equity of redemption." *Id.*

Nevertheless, actions which violate the stay are void even when there is no actual notice of the existence of the stay. 2 *Collier on Bankruptcy* § 362.03, p. 362–31 (15th ed. 1979). Even if the Rule 60(c) movant fails to carry its burden of showing entitlement to relief, this will not alter the void character of a judgment entered in violation of a federal bankruptcy stay.

■ Remedies other than attacking the judgment in the court which entered it are available, however. A judgment debtor may attack the void judgment collaterally in bankruptcy court. *See In re O'Connor,* 42 B.R. 390 (Bankr.E.D.Ark.1984) (default judgment taken in violation of stay is void). Specifically, the judgment debtor may seek a return of disbursements made in violation of the stay. *See, e.g., In re Dungey,* 99 B.R. 814 (Bankr.S.D.Ohio 1989) (garnished wages distributed in violation of stay ordered returned to debtor). However, in the interests of judicial economy and in keeping with federal and state principles of comity, we suggest that trial judges faced with a Rule 60(c) motion determine the time at which a bankruptcy petition was filed, or direct the movant to do so, when the motion has failed to inform the court of the time of filing.

### III.

■ National Franchise also argues that the superior court should have vacated the default under Rule 60(c)(6), Arizona Rules of Civil Procedure, because the writ of garnishment so confused National Franchise that it could not timely respond.

A motion to set aside a default judgment may be granted only when the moving party has shown that: his failure to answer was excused by one of the grounds set forth in Rule 60(c); he acted promptly in seeking relief from the entry of default; and he had a meritorious defense. *Webb v. Erickson,* 134 Ariz. at 186, 655 P.2d at 610. The grant or denial of a Rule 60(c) motion is within the trial court's discretion, and will not be overturned unless the court clearly abused its discretion. *Union Oil Co. of California v. Hudson Oil Co., Inc.,* 131 Ariz. 285, 288, 640 P.2d 847, 850 (1982).

The writ of garnishment states in pertinent part:

The Garnishment shall survive until any of the following occurs:

. . . .

b. The Judgment Debtors leave the Garnishee's employ for more than sixty (60) days.

. . . .

e. The Judgment Debtors have not earned any nonexempt earnings for at least sixty (60) days. . . .

National Franchise argues that the language of the writ led it to fail to respond. First, National Franchise asserts that the judgment debtor, Kenneth Hollowell, received no salary from National Franchise after January of 1988. Because the writ of garnishment was served on National Franchise in June, 1988, National Franchise asserts that the judgment debtor had not earned any non-exempt earnings for at least 60 days. Thus, according to part e of the writ, the garnishment failed to survive and a response was unnecessary. In addition, because Mr. Hollowell believed he had left the "Garnishee's employ for more than 60 days," National Franchise argues that part b of the writ rendered a response unnecessary. According to National Franchise, Mr. Hollowell felt that Ameritech Enterprises, Inc., rather than National Franchise, had been his employer since January, 1988. Hollowell's affidavit stated that at the time of the garnishment proceedings he was both president and chief executive officer of Ameritech Enterprises, Inc. and National Franchise. Ameritech Enterprises, Inc., is the parent company of National Franchise. Hollowell's affidavit stated that he received no salary from National Franchise after January, 1988.

National Franchise relies on *Webb v. Erickson,* 134 Ariz. 182, 655 P.2d 6 (1982), for the proposition that a trial court should consider the confusing nature of an entire garnishment proceeding in deciding whether to set aside a default judgment. National Franchise also correctly notes that *Webb* allows greater liberality in setting aside a

judgment when the defendant is a garnishee.

In *Webb*, the garnishee, James Bates, moved to set aside a default judgment on the grounds that he did not understand the writ of garnishment. When Mr. Bates was served with this writ, he had just been released from the hospital after a seven week stay, was involved in divorce proceedings and had never heard of the judgment debtor, James Webb. *Id.* at 185, 655 P.2d at 658. Due to these conditions, Bates argued he did not clearly understand the writ which was served upon him, and moved to set aside the default judgment.

■ In upholding the trial court's order setting aside the judgment, the Arizona Supreme Court held that a trial court *could* consider factors such as the entire garnishment proceeding, the physical and mental condition of the garnishee and wording contained in the summons and writ in deciding whether to set aside a default judgment. *Id.* at 187–88, 655 P.2d at 11–12. However, the decision is ultimately a discretionary one. As the Supreme Court upheld the trial court's decision in *Webb*, so too we affirm the decision here.

No abuse of discretion occurred in this case. It was for the trial court to consider the language of the writ of garnishment and its effect on the garnishee's behavior, and then decide whether those circumstances justified relief. Among other things, the judge could have considered that the garnishee was closely connected with the judgment debtor: in fact, the judgment debtor, Kenneth Hollowell, was president and chief executive officer of National Franchise at the time of this garnishment proceeding. Moreover, the judge could have determined that even if the writ of garnishment were confusing, the subsequent order to show cause was not. That order summoned the garnishee to appear in court and should have resolved any doubt whether it was obligated to respond.

We cannot say the trial court abused its discretion in denying National Franchise's motion to set aside the default judgment.

## IV.

■ Appellee, Larry Miller, has requested sanctions against National Franchise based on Rule 11, Arizona Rules of Civil Procedure. Miller argues that the appeal has no basis in law or fact and has caused unnecessary delay.

Rule 11(a) states in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer ... that to the best of the signor's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ...

Rule 25, Arizona Rules of Civil Appellate Procedure authorizes sanctions for frivolous appeals. We need not decide whether Rule 11 also applies to frivolous appeals, however, because we do not find the appeal so lacking in factual or legal basis that it should be regarded as frivolous. Furthermore, the record does not reveal bad faith, delay or harassment by National Franchise. Neither Rule 11 nor Rule 25 authorizes sanctions under these circumstances. We therefore reject the request for sanctions on appeal.

For the foregoing reasons we affirm the superior court's order.

TAYLOR, P.J., and CONTRERAS, J., concur.