616 A.2d 906

**The HOME INDEMNITY COMPANY**

v.

**Lucille KILLIAN, Personal Representative of the Estate of Sutton Knuckles, et al.**

**No. 412, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Dec. 7, 1992.

Drake C. Zaharris and John F. Eckhart (Parks, Hansen & Ditch, Towson, Donald J. Gilmore and Parks, Hansen & Ditch, Westminster, on the brief), for appellant.

Harry Goldman, Jr. (William Beveridge, Jr. and Goldman & Skeen, P.A., on the brief), Baltimore, for appellees.

Argued before WILNER, C.J., and BISHOP and DAVIS, JJ.

WILNER, Chief Judge.

This case is a procedural nightmare.

In 1989, the Circuit Court for Baltimore City entered judgments in favor of appellees Killian and Balbos in the amounts of $1,800,000 and $2,000,000, respectively, as compensatory damages in asbestos-related claims.[1] Those judgments were entered jointly and severally against a number of defendants, including Celotex Corporation. In the Killian case, an additional judgment for punitive damages was entered against three defendants, but not against Celotex. Appeals were taken from those judgments, and, in connection therewith, appellant Home Indemnity Company, on October 3, 1989, posted two supersedeas bonds on behalf of Celotex—one for $2,000,000 in the Killian case and the other for $2,300,000 in the Balbos case. In relevant part, each bond stated:

"NOW THEREFORE, the conditions of this obligation are such that if The Celotex Corporation shall prosecute its appeal to effect or if The Celotex Corporation shall satisfy the judgment against it in full, together with costs, interests and damages for delay, if for any reason the appeal is dismissed or if the judgment against The Celotex Corporation is affirmed, or if The Celotex Corporation shall satisfy in full any modification of the judgment against it and such costs, interest and damages as the Court of Special Appeals of Maryland may adjudge and award against it, then this obligation is void; otherwise, this obligation shall remain in full force and effect. This obligation shall remain in effect pending review of the case by the Maryland Court of Appeals."

---

**1.** The plaintiffs, and appellees here, are Lucille Killian, Personal Representative for the Estate of Sutton Knuckles, Paul Balbos, Personal Representative for the Estate of Leslie Balbos, and Robert Fox, Personal Representative for the Estate of Ann Balbos. Sutton Knuckles and Leslie Balbos were the persons who suffered injury and death from exposure to asbestos. For purposes of convenience, we shall refer to the plaintiffs/appellees as simply Killian and Balbos.

The appeals were duly argued in this Court, and, on August 29, 1990, this Court filed an Opinion vacating the judgments for punitive damages but affirming the judgments for compensatory damages. One-fifth of the costs of the appeal were assessed against Killian and four-fifths were to be divided among the defendants, including Celotex. *See Eagle–Picher v. Balbos,* 84 Md.App. 10, 103, 578 A.2d 228 (1990). During September, 1990, motions for reconsideration were filed by one defendant (Eagle–Picher) and by the plaintiffs, thereby delaying issuance of the Court's mandate. Md.Rule 8–605(c). On September 25, 1990, the Eagle–Picher motion was granted and a footnote was added to the Opinion. That did not affect the end result.

On or about October 22, 1990, Celotex filed with the Clerk of this Court a Notice of Filing of Petition in Bankruptcy and Automatic Stay, informing the Court that on October 12, 1990, Celotex had filed a petition for protection under Title 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Middle District of Florida and that "proceedings against Celotex are automatically stayed." Attached to the Notice was an order of the Bankruptcy Court dated October 17, 1990, that, among other things, enjoined all parties, including a State, from "continuing any judicial ... proceeding involving any of the Debtors regardless of (a) who initiated the proceeding, (b) whether the matter is on appeal and a supersedeas bond has been posted by the Debtors or (c) the appellant in an appeal is one of the Debtors." That order has since been referred to as the § 105 order—a specific stay or injunction entered under § 105 of the Bankruptcy Code.

On October 30, 1990, the plaintiffs' motion for reconsideration was denied. That motion concerned the vacation of the punitive damage award and did not affect Celotex. On November 5, 1990, notwithstanding the Notice of the bankruptcy petition and the § 105 order of the Bankruptcy Court, the Clerk of this Court issued the mandate of the Court in accordance with the Opinion. The judgments against Celotex were affirmed and Celotex was assessed a

share of the costs. Petitions for certiorari were filed with the Court of Appeals by Killian and five of the defendants, but not by Celotex.

On December 17, 1990, Harry Goldman, Jr., counsel for Killian and Balbos, relying on the mandate of this Court and noting that the time for seeking certiorari in the Court of Appeals had lapsed, made demand upon appellant for payment of the judgments against Celotex. As to Killian, the demand was for $1,169,574 plus additional daily interest of $259 until paid; as to Balbos, the demand was for $1,786,849 plus $411 future per diem interest. When no response was forthcoming, Killian and Balbos, on December 31, 1990, moved for judgment against appellant on the bonds.

On January 4, 1991, appellant informed Mr. Goldman that the automatic stay resulting under 11 U.S.C. § 362 upon the filing of the petition for Bankruptcy and the specific order of the Bankruptcy Court entered under 11 U.S.C. § 105 effectively stayed all action against or involving Celotex and that any attempt to collect on the bonds should be addressed to the Bankruptcy Court. Goldman responded that, in his view, the stay order was a nullity, and he therefore pressed his motions for judgment. Rather than filing any response in the Circuit Court, however, appellant and Celotex sought relief in the Bankruptcy Court. On January 16, 1991, that court directed Mr. Goldman to appear before it on January 21, 1991, to show cause why he should not be held in contempt of court for violating the automatic § 362 stay and the specific § 105 order. Goldman did not appear. On January 31, 1991, the Circuit Court, having received no response to the motions, entered judgments against appellant—$1,173,458 in favor of Killian and $1,792,720 in favor of Balbos. The next day, the Bankruptcy Court entered a contempt order against Goldman which, among other things, specifically enjoined Goldman from "taking any action whatsoever associated with collection of the proceeds of any bond posted by the Debtors or the enforcement of any claims involving bonds posted

by the Debtors, *including claims against Home Insurance Company for posting the bonds.*" (Emphasis added). This was the first order of the Bankruptcy Court that specifically forbade any attempt to collect against Home Indemnity.

Stubbornly, the parties continued to proceed only in the court that seemed to favor them, ignoring the orders and rulings of the other court. Appellant filed neither a timely appeal from the judgments entered against it nor a motion under Md.Rules 2–534 or 2–535(a) to alter, amend, or strike those judgments, and so, subject to any possible collateral attack based on their inconsistency with the orders of the Bankruptcy Court, they became final under State law on March 4, 1991. Undeterred by the orders of the Bankruptcy Court, Mr. Goldman, on March 6, requested a writ of execution against appellant's property. The writ was issued, and, on March 11, 1991, the sheriff of Baltimore County levied upon and inventoried the personal property located at appellant's office in the county. Rather than seeking formal relief in the Circuit Court, appellant frightened the sheriff by calling his attention to the Bankruptcy Court orders and moved in that court for a second order of contempt. On March 27, 1991, the Bankruptcy Court issued an order directing Goldman to appear before it on April 19 and show cause why he should not be held in contempt. The sheriff, in light of appellant's letter, postponed the scheduled execution sale, at first until May 2, 1991, and thereafter until a definitive ruling from the Bankruptcy Court.

Faced with the unwillingness of the sheriff to proceed with the sale, Balbos, through Goldman, filed a motion in the Circuit Court on March 21, 1991, to hold appellant in contempt for refusing to pay the judgments of January 31, 1991. In the motion, Mr. Goldman called attention to an order of the Bankruptcy Court fining him $200/day and enjoining him from proceeding against appellant, but he averred that he had taken an appeal from those orders, that he was entitled to a *de novo* review in the United States

District Court, and that that court's backlog was approximately two years. Appellant ignored the motion. On May 23, 1991, the Circuit Court, through Judge Ross, entered an order confirming its earlier view that "it is beyond the jurisdiction of the bankruptcy court to stay the payment of judgments in this case by The Home Indemnity Company in a bankruptcy proceeding of a corporation other than that involving The Home Indemnity Company." The court, in the exercise of its discretion, decided not to hold appellant in contempt because it believed that the plaintiffs could proceed with execution on the judgments, but it did instruct the clerk of the Circuit Court to "refuse to accept any bonds of any kind issued by The Home Indemnity Company."

While all of this was playing out in the Circuit and Bankruptcy Courts, the Court of Appeals, on May 13, 1991, granted the petitions for certiorari that had been filed by Killian and the five defendants. On June 13, 1991, the Bankruptcy Court entered an omnibus order declaring that the supersedeas bonds posted by appellant were part of Celotex's bankruptcy estate. *See Matter of Celotex Corp.*, 128 B.R. 478 (Bankr.M.D.Fla.1991). Digging its own heels in, the Circuit Court, on June 25, 1991, specifically commanded the sheriff of Baltimore County to proceed with the sale of appellant's personal property that had been previously levied. By order of July 2, it extended the time for the sale to October 14, 1991. Appellant and the sheriff appealed the July 2 order.

On July 19, 1991, appellant, as surety for Celotex, filed a motion in this Court to correct the mandate issued on November 5, 1990 by excluding therefrom the affirmance of the judgments for compensatory damages against Celotex. The thrust of the motion was that, because of the automatic stay and the specific order of the Bankruptcy Court that had been issued on October 17, 1990, the issuance of the mandate with respect to Celotex was invalid. Upon consideration of that motion and the plaintiffs' response to it, we agreed that the mandate as to Celotex was issued in error. By order entered August 27, 1991, we concluded that (1) the

mandate should not have issued against Celotex in light of the automatic stay and the October 17, 1990 order of the Bankruptcy Court, (2) to the extent the mandate affirmed the judgments against Celotex and assessed costs against it, the mandate was issued inadvertently and erroneously, (3) because Celotex was not a party to the proceedings then pending in the Court of Appeals and because the 1990 Term of this Court had not yet expired, this Court had revisory power to recall and correct the mandate, and (4) such correction was necessary to conform with the U.S. Bankruptcy law and the order of the Bankruptcy Court. Accordingly, we recalled the mandate and amended it, *nunc pro tunc*, to add that "proceedings in this Court with respect to appellant Celotex Corporation [are] stayed pending further order of the U.S. Bankruptcy Court for the Middle District of Florida" and that the costs assessed against the defendants were to be paid by those defendants "other than Celotex Corporation."

Regarding that order as a "glaring error" that "abjectly, improperly, retroactively and unconstitutionally ceded [jurisdiction] to the Bankruptcy Court," the plaintiffs petitioned for certiorari in the Court of Appeals. While that petition was pending, the sheriff filed a motion in this Court to remand the case to the Circuit Court to reconsider its June 25 and July 2 orders in light of our August 27 order correcting the mandate. On October 7, 1991, this Court entered a consent order granting the motion and remanding the case to the Circuit Court for further consideration. Four days later, the Court of Appeals denied the petition for certiorari seeking review of our August 27 order. On remand, the sheriff asked the Circuit Court to reconsider the June 25 order requiring him to proceed with the sale. Appellant moved the court to vacate the January 31 judgments and reconsider the May 22 order directing the clerk not to accept any more bonds from appellant.

While these motions were pending, the Bankruptcy Court, on November 1, 1991, responded to several motions to lift its stay. In an order entered that day, it granted the

motions for relief "for the limited purpose of allowing the Maryland Court of Special Appeals to issue its Mandate as to Celotex and to permit Celotex to prosecute its appeal of the Judgments so that all appeals on the merits associated with the Judgments obtained by [the plaintiffs] against The Celotex Corporation may proceed to conclusion, including the issuance of appellate decisions and necessary mandates." In that regard, the court directed that Celotex would have 30 days from the date of the order "to take any action with respect to its right of appeal of the Judgments." In the same order, however, the court ruled that "the stay is not modified as to any other matter *including the determination of the status of supersedeas bonds or the applicability of 11 U.S.C. § 362 or 11 U.S.C. § 105.*" (Emphasis added). In furtherance of that ruling, the court added:

> "That to the extent the Motion seeks to modify the stay to vacate the express stay order entered by this Court on October 17, 1990, to permit any collection efforts by the [plaintiffs] *or execution against the bonds filed by Celotex in the pending appeals,* such modification is expressly denied."

(Emphasis added.)

Pursuant to that ruling, Celotex filed a petition for certiorari in the Court of Appeals. Unfortunately, it neglected to inform this Court of the latest Bankruptcy Court order or to request that we reissue the mandate that had been recalled on August 27, 1991. To this day, this Court has never reissued that mandate. Although the Court of Appeals initially granted the petition for certiorari, on June 8, 1992, it dismissed the petition as having been improvidently granted. *See Celotex Corp. v. Balbos,* 326 Md. 652, 607 A.2d 1 (1992).

Meanwhile, the Circuit Court, after a hearing, denied appellant's motion to vacate the January 31 judgments against it, finding that those judgments were enrolled, that there was no fraud, mistake, or irregularity in their entry, and that, in any event, appellant had not used due diligence

in seeking relief from them. Because this Court had stayed the June 25, 1991 order directing the sheriff to sell appellant's property, the court determined that there was nothing further for it to do in that regard. When the court denied appellant's motion to reconsider its refusal to vacate the January 31 judgments, appellant took this appeal. No appeal was filed by the sheriff. Finally, on April 10, 1992, the Court of Appeals affirmed this Court's decision in *Eagle–Picher* except in two respects not relevant to this appeal. *Eagle–Picher v. Balbos*, 326 Md. 179, 604 A.2d 445 (1992).

Appellant makes three arguments in this appeal: that the circuit court improperly entered the January 31 judgments because the underlying judgments against Celotex were not final; that it had no jurisdiction or authority to enter the judgments because of the automatic stay and subsequent order of the Bankruptcy Court; and that it was without authority to order the clerk not to accept further bonds from appellant. The plaintiffs have responded to those arguments and, in addition, moved to dismiss the appeal as moot. We shall deal with that motion first.

■ The mootness argument is based on the assertion that, when the Court of Appeals dismissed Celotex's petition for certiorari, the judgments against Celotex became final. In the first place, the underlying premise is not correct. The effect of our August 27, 1991 order was to keep the appeal as to Celotex alive in this Court. The denial by the Court of Appeals of the plaintiffs' petition for certiorari to review that order confirmed that fact, and, if there ever was a question as to whether any superseding event changed that situation, it was dispelled when the Court of Appeals ultimately dismissed Celotex's petition for certiorari. We have never reissued our mandate with respect to Celotex, and, although we would be well-disposed to reissue it, our present authority to do so is far from clear.

The November 1, 1991 order of the Bankruptcy Court that partially lifted the stay in order to allow Celotex to proceed further with the pending appeal gave it only 30 days to take whatever action was necessary to achieve that result. That 30–day period has long since expired, and it would appear that the pre-November 1 stay is back in effect. Accordingly, although the issues raised by Celotex would seem to be controlled by the decision of the Court of Appeals in *Eagle–Picher v. Balbos, supra,* 326 Md. 179, 604 A.2d 445, the validity of the judgments against Celotex has not yet been officially and finally resolved and is still pending in this Court. Even if that were not the case, we fail to see how the finality of the judgments against Celotex under State law would make the appeal moot. If, as appellant urges, all attempts to collect on the bonds had been stayed or enjoined by an order of the U.S. Bankruptcy Court, the issue of the Circuit Court's jurisdiction or authority to enter the January 31 judgments would remain very much at issue. For these reasons, we deny the motion to dismiss.

The continued pendency of the Celotex appeal has a substantive effect as well. The bonds are not payable until the appeal process has ended. Had we not erroneously included Celotex in the original mandate, there would have been no question that judgments could not have been rendered against appellant. But that original mandate was facially valid and, subject to the supervening authority of the Bankruptcy Court, was entitled to be relied upon by the plaintiffs and the Circuit Court. The January 31 judgments were obviously premised on the validity of that mandate.

By failing either to seek timely reconsideration in the Circuit Court or to file a timely appeal, appellant allowed those judgments to become enrolled and therefore, in terms of State law and procedure, is entitled to relief, if at all, only under Md.Rule 2–535(b). It must show that the judgments were entered by fraud, mistake, or irregularity and that it acted with due diligence in attacking them.

■■■ There is no suggestion, or evidence, of fraud in the entry of the judgments. Nor do we believe that there was an irregularity, as that term has been defined for purpose of the Rule. An "irregularity" under the Rule has been defined many times as "the doing or not doing of that, in the conduct of a suit at law, which, conformable *to the practice of the court,* ought or ought not to be done." (Emphasis added.) *Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291 (1975) and cases cited there; also *Autobahn v. Baltimore,* 321 Md. 558, 562, 583 A.2d 731 (1991). When the judgments at issue here were entered, their entry was entirely conformable with the practice of the court that entered them. The Circuit Court was relying upon a mandate of this Court which was facially valid and which fully authorized the action taken. It may be that the issuance of our mandate was an irregularity, because it is not conformable with the practice of this Court to issue mandates in violation of Bankruptcy Court stays, but that does not mean that entry of judgments in reliance on that mandate was an irregularity.

■■■ This brings us to the question of mistake. As used in the Rule, a "mistake" does not mean merely an error, or even an error of law. It is confined to what have been termed "jurisdictional" mistakes, i.e., where the court has no power to enter the judgment. *Bernstein v. Kapneck,* 46 Md.App. 231, 239, 417 A.2d 456 (1980), *aff'd,* 290 Md. 452, 430 A.2d 602 (1981); *Hamilos v. Hamilos,* 52 Md.App. 488, 497, 450 A.2d 1316 (1982), *aff'd, Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436, *aff'd, Hamilos v. Hamilos,* 297 Md. 99, 465 A.2d 445 (1983); *Evans v. Evans,* 75 Md.App. 364, 366, 541 A.2d 648 (1988). Examples of these kinds of mistakes were given in *Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 387, 347 A.2d 837 (1975)— principally judgments entered in the absence of valid service of process. A judgment that is simply wrong—that has no legal foundation and that is the product of judicial error—may be reversed on appeal, but its entry is not regarded as a jurisdictional mistake. As noted above, the

Circuit court entered these judgments on the basis of our mandate. It clearly had the jurisdiction to do so even if, as was discovered later, that mandate should not have issued and was probably void. *See* Md.Rules 1–404 and 8–611(b). The invalidity of the mandate made the judgments erroneous, but it did not make them *ultra vires.*

■ We turn, then, to the effect of the Celotex bankruptcy proceeding. Although there is some disagreement on the point, the predominant view seems to be as appellant contends, that an order of a State court entered in violation of, or that is inconsistent with, either an automatic stay under § 362 of the Bankruptcy Code or an injunction entered under § 105 of that Code is void *ab initio* and without legal effect. *See Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir.1982); *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Ward,* 837 F.2d 124 (3d Cir.1988); *I.C.C. v. Holmes Transp., Inc.,* 931 F.2d 984 (1st Cir.1991); *In re Smith,* 876 F.2d 524 (6th Cir.1989); *In re Shamblin,* 890 F.2d 123 (9th Cir.1989); *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371 (10th Cir. 1990); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982); *In re Lampkin,* 116 B.R. 450 (Bankr. D.Md.1990); *In re Rose,* 113 B.R. 534 (W.D.Mo.1990); *Miller v. National Franchise Services,* 167 Ariz. 403, 807 P.2d 1139 (App.1991); *In re Marriage of Berkland,* 762 P.2d 779 (Colo.App.1988); *Personalized Air Con. v. C.M. Systems,* 522 So.2d 465 (Fla.App.1988); *Townsend v. Magic Graphics, Inc.,* 169 Ill.App.3d 73, 119 Ill.Dec. 740, 523 N.E.2d 208 (1988); *First Bank v. Sisters of Mercy Health,* 545 N.E.2d 1134 (Ind.App.1989); *Gulfco Finance v. McCormick,* 577 So.2d 778 (La.App.1991); *Price v. Cole,* 31 Mass.App.Ct. 1, 574 N.E.2d 403 (1991); *Overbey v. Murray,* 569 So.2d 303 (Miss.1990); *Star–Tel v. Nacogdoches Telecommunications,* 755 S.W.2d 146 (Tex.App.1988). Apparently alone among the Federal appellate courts, the Fifth Circuit Court of Appeals has concluded that, because the Bankruptcy

Court has the power to lift an automatic stay retroactively (a view not necessarily shared by other Federal appellate courts), actions or orders taken in violation of such stays are merely voidable and not void. *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989). Other courts have carved out a very limited equitable exception to the rule and have allowed certain actions or orders to stand. In most of these cases, however, in addition to other compelling circumstances, such as fraud on the part of the debtor, the action or order was taken without knowledge of the bankruptcy action. *See In re Smith Corset Shops, Inc., supra,* 696 F.2d 971; *In re Calder,* 907 F.2d 953 (10th Cir.1990). Under any of the views adopted by the Federal courts, it is clear that, if the judgments entered on January 31, 1991 were in contravention of or inconsistent with either the § 362 stay or the § 105 order, they would not be valid. The Bankruptcy Court has *not* lifted either the stay or the order, and has, indeed, expressly confirmed both; nor do we see any equitable considerations that might justify sustaining a State judgment entered in violation of a Bankruptcy Court order.

The question, then, is whether those judgments were, in fact (or in law), in violation of any Bankruptcy stay or order then in effect. We find no such violation or inconsistency and for that reason conclude that there was no jurisdictional mistake or Federal impediment to their entry.

Section 362(a)(1) stays the continuation of judicial proceedings against "the debtor." Although the Bankruptcy Court has the authority in certain circumstances to enter further orders staying proceedings against other people, if those proceedings would affect the debtor or the debtor's bankruptcy estate, the automatic stay effected by § 362 does not bar proceedings against persons other than the debtor. *Collier v. Eagle–Picher, Inc.,* 86 Md.App. 38, 585 A.2d 256, *cert. denied,* 323 Md. 33, 591 A.2d 249 (1991). The debtor in this case was Celotex, not appellant. It therefore follows that the judgments were not precluded by the § 362 stay. Nor do we see any violation of the § 105

order. That order too applied only to proceedings by, against, or affecting the property of "the debtor," i.e., Celotex. It said nothing whatever about enforcing an obligation of appellant.

The fact is that, whatever may have been in the mind of the Bankruptcy Court judge,[2] the first reference in any order to appellant and the first discernible attempt to preclude a proceeding to collect on the bonds came in the order of February 1, 1991, which, as noted, enjoined Mr. Goldman from taking any action to enforce any claim involving bonds posted by Celotex, including those posted by appellant. That order, however, even if regarded as applying to the circuit court and not just to Mr. Goldman, came *after* the judgments had been entered and could not, therefore, be regarded as invalidating them. That is also true, of course, with respect to the omnibus order of June 13, 1991, declaring the bonds to be part of Celotex's bankruptcy estate.

In summary, we conclude that there was no jurisdictional mistake in the court's reliance upon the mandate initially issued by this Court and there was no impediment to the entry of the judgments by reason of the existing status of Celotex's bankruptcy. It may well be that the State courts are now precluded from taking any action to enforce the judgments entered against appellant, at least so long as the February 1 and June 13 orders remain in effect, but we see no error in the court's refusal to strike those judgments.

 This leaves us with the final issue raised by appellant—whether the court erred in instructing the clerk not to accept any further bonds from appellant.

---

**2.** In his omnibus order of June 13, 1991, the Bankruptcy Court judge stated that the § 105 order of October 17, 1990 "was for the purpose of precluding, among other things, judgment creditors from proceeding in various state and federal courts against supersedeas bonds without first coming before this Court." *Matter of Celotex Corp., supra,* 128 B.R. at 482. Unfortunately, that purpose does not appear to us to have been clearly reflected in the § 105 order. *Compare Willis v. Celotex Corp.,* 978 F.2d 146 (4th Cir.1992).

It is evident that the court took that action because it concluded that appellant was not a reliable surety. On this record, we cannot say that that conclusion was erroneous. As the plaintiffs note, the determination of the Bankruptcy Court that the supersedeas bonds written by appellant were part of Celotex's bankruptcy estate was a most unusual determination, one that, on its face, appears inconsistent with the views of many other Federal District and Bankruptcy courts. That alone would be no reason to penalize appellant, however. If, through no fault of its own, it found itself subject to an order that it was bound to obey in one case, the conclusion could not properly be drawn that it would be unreliable in any other case.

The problem here is that there is substantial evidence that appellant was not entirely innocent in the matter and that the Bankruptcy Court's determination that the supersedeas bonds were part of Celotex's estate derived from an August, 1989 confidential agreement between Celotex and appellant that had not been disclosed to the plaintiffs or to the Circuit Court when the bonds were posted. Paragraph 3.a. of that agreement obligated appellant, upon request, to post supersedeas bonds for Celotex, but ¶ 3.e. provided that "any bond obtained by or from [appellant] pursuant to this paragraph is the property of [Celotex] for purposes of any petition in bankruptcy that may be filed by or against [Celotex]." We have no doubt that, had that agreement been made known when Celotex noted its appeal, appellant would not have been accepted as a surety, for it raised at least the likelihood, if not the certainty, that, in the event of a Celotex bankruptcy, collection on the bonds might be in serious jeopardy.

That appellant would enter into such an agreement and then fail to disclose it when posting substantial bonds for a principal that was being sued in thousands of asbestos cases throughout the country strikes us as bordering on fraud. Absent some explanation that does not appear in this record, we too would regard appellant as a wholly unreliable surety. The problem is that we see no authority

in the law for a single circuit court judge to pass such a blanket order. Md.Rule 1–402(b) provides:

"Except as provided in this section, a bond is subject to approval by the clerk as to form, amount, *and surety.* If the clerk refuses to approve the bond, if an adverse party objects in writing to the bond, or if a rule requires that the court approve the bond, the bond is subject to approval by the court, after notice and an opportunity for any hearing the court may direct."

(Emphasis added.)

This Rule places in the clerk the responsibility for approving the surety on a supersedeas bond. The court's role seems limited to approving or rejecting bonds in particular cases under the circumstances noted. Although the Circuit Court, as a whole, once had a "visitorial" power over the clerk, that power is vested now in the Court of Appeals, and, in any event, it would not seem to have allowed one judge in a multi-judge court to have directed the clerk in such a specific way. We therefore must vacate the May 23, 1991 order. During the period between the filing of this Opinion and the issuance of our mandate, however, or even after the issuance of the mandate, there would seem to be no impediment to the judge or the court as a whole recommending that the clerk consider taking similar action in light of the circumstances.

ORDER DENYING APPELLANT'S MOTION TO VACATE JUDGMENTS OF JANUARY 31, 1991 AFFIRMED; ORDER OF MAY 23, 1991 DIRECTING CLERK TO REFUSE TO ACCEPT BONDS OF APPELLANT VACATED; APPELLANT TO PAY COSTS OF THIS APPEAL.

BISHOP, Judge, dissenting.

I respectfully dissent from the holding of the majority that affirms the judgment against Home.

I do not disagree with the legal reasoning of the majority, only with their legal conclusions. I believe that the circuit court erred when it granted the judgment against the

appellant despite the fact that the Bankruptcy Court's stay was in effect with reference to Celotex before our mandate was issued. That judgment, of course, was the sole basis upon which the circuit court granted judgment against Home.

On January 2, 1991, the Bankruptcy Court issued an order on Goldman for him to show cause why he should not be held in contempt. Apparently, he ignored the order and did not respond. On February 1, 1991, Goldman was held in contempt by the Bankruptcy Court and was enjoined from "taking any action whatsoever associated with collection of the proceeds of any bond posted by the debtors or the enforcement of any claims involving bonds posted by the debtors, including claims against Home Insurance Company for posting the bonds." Again, in spite of the contempt holding and the injunction in the Bankruptcy Court's order, Goldman chose to continue his actions on behalf of the appellees in the Circuit Court for Baltimore City. The circuit court order was entered on January 31, 1991, ten days after the show cause order was served on Goldman. The judgment became final on March 4, 1991, almost one month after Goldman was held in contempt of court and was enjoined from the action set out above, and almost five months after this Court had been advised of the stay. Clearly, Home Indemnity Company did not act expeditiously and apparently placed great faith in the stay of the Bankruptcy Court.

I simply cannot accept the conclusion that a void judgment of this Court may be the basis for a valid judgment of the circuit court. As the majority correctly states, as used in the rule, a mistake is confined to "jurisdictional" mistakes, i.e., whether the court has power to enter the judgment. I would hold that the circuit court did not have the power to enter the judgment. I base this conclusion on the fact that the order of the Bankruptcy Court had issued prior to the entry of our judgment.

Based on the foregoing, I would hold that the Circuit Court for Baltimore City did not have jurisdiction to enter

the judgment and I would have reversed the order of that court denying appellant's motion to vacate that judgment.

I concur with the vacation of the order of May 23, 1991, directing the Clerk of the Circuit Court for Baltimore City to refuse to accept bonds of the appellant.