667 A.2d 1007

**Malcolm DATES, Jr., et al.**

v.

**The HARBOR BANK OF MARYLAND.**

**No. 371, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Dec. 5, 1995.

---

Obie Pinckney, Jr., Oxon Hill, for Appellants.

David Daneman (Wallace & Whitney, P.A., on the brief), Baltimore, for Appellee.

Argued before MOYLAN, CATHELL and HARRELL, JJ.

CATHELL, Judge.

This case deals with whether a bankruptcy petition, and its attendant stay, filed by an individual, can prevent the foreclosure sale of property owned by a corporate entity in which the petitioning individual claims an "unspecified" financial interest, and for which the petitioning individual is a guarantor of the debt secured by the subject property. This implicates significant interests on the part of the property owner, the mortgagee, and the State: The owner may be divested of all right, title, and interest in the property. The mortgagee's concerns lie in protecting its right to foreclose upon default and in protecting its position adequately. The State, although not a party to the proceedings, has a significant interest in the continued vitality of the foreclosure sale process.

Appellants, Dates Real Estate Ltd. (DRE), its president, Victor Dates (Victor), and Malcolm Dates Jr. (Malcolm), appeal the denial by the Circuit Court for Baltimore City (Kaplan, J., presiding) of what the court considered an untimely motion to set aside the foreclosure sale by appellee, the Harbor Bank of Maryland (the Bank), of certain property owned solely by DRE. The court cited as the basis for its denial appellants' failure to show cause, by the date set forth in the published notice therefore, why the sale should not be ratified. Appellants present the following questions on appeal:

I. Did the court err by dismissing [appellants'] Motion to Set Aside Foreclosure and Assess Damages?

II. Could compensatory and punitive damages be assessed against Harbor Bank?

### The Facts

DRE,[1] a Maryland corporation, by signature of its president, Victor Dates, executed a promissory note (the Note) in favor of the Bank in the amount of $35,000. The Note was

---

1. Dates Real Estate, Ltd. is referred to throughout the briefs and record extract as Dates Real Estate, Inc., and Dates Realty, Inc.

secured by a Deed of Trust, also signed by Victor in his corporate officer capacity, in which DRE granted to the Bank a lien on two parcels of property owned by the company, located at 4305 and 4307 York Road in Baltimore. Contemporaneous with the execution of the Note and Deed of Trust, both Victor and Malcolm executed a Guaranty, personally guaranteeing payment of the Note.

In January of 1994, the Bank notified appellants of a planned foreclosure sale of the two properties due to DRE's failure to make the payments required by the Note. The Circuit Court for Baltimore City entered a Decree of Sale of Mortgage Premises on February 4, 1994, thereby permitting the Bank to proceed with the foreclosure sale. On February 23, 1994, the Bank conducted the sale and the property was sold. At no time relevant hereto did the Bank seek a deficiency decree against the corporation, nor has the Bank, insofar as we can discern from the record, sought to require the guarantors to perform under the guarantee. This is probably because the foreclosure sale did not result in a deficiency in the first instance.

On the day prior to the foreclosure sale, Malcolm filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland.[2] Pursuant to 11 U.S.C. §§ 362, 1301,[3] the Bankruptcy Court issued a stay, thereby protecting Malcolm from the actions of his creditors. Notice of the filing and the stay was afforded to the Bank. Nonetheless, as stated, the sale proceeded.

The circuit court scheduled ratification of the foreclosure sale for April 4, 1994, and notice to that effect was published as required by statute. With no exceptions to the sale having been made within the statutorily prescribed period, the court

---

**2.** We note that a corporation, such as DRE, is not eligible for bankruptcy under Chapter 13. Pursuant to 11 U.S.C. § 109(e): "Only an individual with regular income ... may be a debtor under chapter 13 of this title."

**3.** All statutory references are to title 11 of the United States Code, the Bankruptcy Code, unless otherwise indicated.

entered a Final Order ratifying the sale on April 27, 1994. It is around this time that DRE located a purchaser of its own for the subject properties. DRE requested that the Bank halt the foreclosure proceedings, and allow it to complete its private sale and satisfy the indebtedness out of the proceeds. As a further step, Malcolm filed with the Bankruptcy Court, on May 17, 1994, a Debtor's Motion to Dismiss Case as to his bankruptcy case whereby he voluntarily withdrew his bankruptcy petition, and the stay was lifted. The Bank ultimately rejected DRE's request.

Nearly seven months after ratification of the sale, on November 17, 1994, appellants filed a Motion to Set Aside Foreclosure and Assess Damages. In their Motion, appellants conceded that DRE was the owner of the subject property and that DRE had become delinquent in its payments on the Note. Appellants argued, nonetheless, that the automatic stay issued upon the filing of Malcolm's Chapter 13 bankruptcy petition barred the foreclosure sale.

At oral argument, appellant proffered for the first time that the proceedings should have been stayed because Malcolm had listed either an ownership interest in the property, or his guarantee obligation, on various bankruptcy schedules. As we have indicated, while he may have owned stock in the corporation, it, not he, owned the property at issue. In any event, appellants did not file these alleged schedules at the trial. Thus, it was entirely appropriate for the trial court to resolve the issue without consideration of such schedules, regardless of appellants' counsel's broad based assertions. If Malcolm, in fact, listed the corporation's property in his estate, which we have no way of knowing, it would have been, as we shall indicate, improper for him to have done so. The property was not part of his estate.

Appellants thereafter sought to have the sale voided and to have damages assessed against the Bank. As previously stated, on January 9, 1995, the circuit court issued an order denying appellants' motion as untimely, given their failure to

show cause why the sale should not be ratified by the date set in the notices. This appeal is from that order.

## Discussion

We note, initially, that, once a mortgage foreclosure sale has been finally ratified, the validity of the sale is *res judicata*, and, in order to have the sale set aside, appellants must show either fraud or illegality. *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 511, 250 A.2d 646 (1969). In an attempt to show such illegality, appellants correctly point out that actions taken in violation of an automatic stay applicable to a property are void *ab initio*. They go on to argue that, because the Bank sold the subject properties after the filing of Malcolm's bankruptcy petition, which triggered the stay, the Bank thereby violated the stay. What appellants failed to show, however, is that the stay attendant to Malcolm's Chapter 13 petition was operative against these properties—properties titled to DRE. We explain.

The initiation of a case in bankruptcy, accomplished by the filing of a petition, triggers several occurrences. First, the filing creates the bankruptcy estate, "which is a new and different entity from the debtor." *In re DeLuca*, 142 B.R. 687, 691 (Bankr.D.N.J.1992). As Malcolm's bankruptcy petition was filed under Chapter 13, §§ 541 and 1306 of the Bankruptcy Code delineate the scope of the estate. Section 541 provides generally that "all legal or equitable interests of the debtor ... as of the commencement of the case," wherever located and by whomever held, are part of the debtor's estate. To this, § 1306 adds "all property ... that the debtor acquires after the commencement of the case," and all wages earned by the debtor after the commencement of the case. Estate property includes property of the debtor in which a creditor has a security interest or a lien, although such property remains subject to the lien. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

Concurrent with the filing of the petition and the creation of the estate, §§ 362 and 1301 of the Bankruptcy

Code provide for the automatic stay of actions against the debtor, and this Court has recognized that the predominant view is "that an order of a State court entered in violation of, or that is inconsistent with, . . . [the] automatic stay under § 362 of the Bankruptcy Code . . . is void *ab initio* and without legal effect." *Home Indem. Co. v. Killian,* 94 Md. App. 205, 218, 616 A.2d 906 (1992) (citing *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940)), *cert. granted,* 330 Md. 458, 624 A.2d 954 (1993). Section 362 stays, *inter alia,* "any act to obtain possession of property of the estate" and "any act to . . . enforce any lien against property of the estate." Included among those acts stayed are mortgage foreclosure proceedings taken against property of the estate. *In re Konowitz,* 905 F.2d 55 (4th Cir.1990); *In re De Souza,* 135 B.R. 793, 796 (Bankr.D.Md.1991) (stating that "a bankruptcy filing stops the completion of a foreclosure sale").

By virtue of Malcolm's filing a bankruptcy petition, the party against whom actions were stayed was Malcolm, not DRE. The subject properties, 4305 and 4307 York Road, were owned by DRE. Appellants conceded this in their Motion to Set Aside Foreclosure and Assess Damages before the circuit court. "[W]here a corporation takes title to real property, it holds that property in its own name and right. . . ." *Dean v. Pinder,* 312 Md. 154, 164, 538 A.2d 1184 (1988). Thus, when DRE purchased the subject properties from its predecessor in interest, the properties became and were the property of the corporation. The record reflects, and appellants' proposed sales contract indicates that Malcolm has no legal ownership in the properties other than as a guarantor on the Note. Thus, because Malcolm did not have a legal or equitable interest in these properties and did not acquire them after the commencement of his case, these properties were not a part of his bankruptcy estate. The automatic stay of § 362 only operates to stay actions taken against the estate of the debtor; as the properties the Bank foreclosed upon were not part of Malcolm's bankruptcy estate, the foreclosure could not have been stayed by § 362.

The purpose of the stay is to put a halt to "proceedings against the debtor, *and no other*, to preserve the status quo of the estate in an effort to ultimately effect and implement ... a successful and equitable reorganization or liquidation." *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th Cir.1983) (emphasis added, footnote omitted). If the tables were turned and DRE were in bankruptcy and Malcolm was not, it is clear that he could not invoke the corporation's automatic stay in the event the Bank had pursued him under his guarantee. "It is universally acknowledged that an automatic stay of a proceeding accorded by § 362 may not be invoked by entities such as sureties, *guarantors*, co-obligors, or others with a similar legal or factual nexus to the ... debtor." *Lynch*, 710 F.2d at 1196 (emphasis added); *Collier v. Eagle–Picher Indus. Inc.*, 86 Md.App. 38, 48, 585 A.2d 256 (quoting *Lynch* and noting that only under "unusual circumstances" will a bankruptcy court order proceedings against a nondebtor codefendant to be stayed), *cert. denied*, 323 Md. 33, 591 A.2d 249 (1991). We see no reason, nor have appellants argued, why the converse is not true as well—*i.e.*, that the bankruptcy of the guarantor does not stay proceedings against the borrower.

Section 1301 provides for the stay of actions taken against codebtors of the bankruptcy petitioner in limited circumstances. This section is principally designed to protect a debtor by staying actions against a codebtor. The section provides, in pertinent part:

> [A] creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor....

The term codebtor, although not defined in the Bankruptcy Code, refers to a "signing obligor who did not receive the consideration for the claim held by the creditor, and, therefore, who put forward his creditworthiness and assumed liability on the debt solely for the benefit of the debtor now in bankruptcy." *In re Bigalk*, 75 B.R. 561, 565

(Bankr.D.Minn.1987). Consequently, it might be at least arguable that Victor Dates was the codebtor of Malcolm by virtue of their cosigning the Guaranty. The same simply cannot be said, however, with regard to the relationship between Malcolm and DRE.

Moreover, by its own terms, § 1301 stays only a creditor's actions to collect on a *consumer debt,* a term defined in the Code as any "debt incurred by an individual primarily for a personal, family, or household purpose." § 101(8). "Although it is possible that real property may be the subject of a consumer debt, debts incurred on real property for business purposes cannot be consumer debts." *In re Panaia,* 65 B.R. 865, 869 (Bankr.D.Mass.1986). In the case *sub judice,* Malcolm gave his personal guarantee on a note made by DRE in order to secure the loan from the Bank to DRE. The guarantee was undertaken for the purchase of real property to be held by a corporate entity for the purpose, presumably, of furthering the interests of that corporation. Such a guarantee is not for "personal, family, or household" purposes. Therefore, even if we were to find that DRE was Malcolm's codebtor, which we do not, the automatic stay of § 1301 would still be unavailing.

### Conclusion

Having found that the Bank did not violate the automatic stay, and, therefore, that the circuit court did not err by dismissing appellants' Motion to Set Aside Foreclosure and Assess Damages, we find it unnecessary to address appellants' second question. We note the issue of whether Malcolm's bankruptcy might have prevented the Bank from taking further action against him pursuant to his personal guarantee. That question, however, is not before us at this time and, given that there was no deficiency, unlikely to come before us hereafter, and we do not need to resolve it.

In *Collier v. Eagle–Picher, Inc., supra,* we held that the debtor's co-obligor or guarantor could not invoke the automatic stay attendant to the debtor's bankruptcy. Today,

we extend that principle, and hold that the stay occasioned by the filing of a guarantor's bankruptcy petition does not bar enforcement of the underlying "guaranteed" obligation against the primary obligor.

The stay generated by Malcolm's bankruptcy was insufficient to bar the foreclosure sale and its subsequent ratification. We shall, therefore, affirm the denial of appellants' motion.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**