REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND
No. 1272
September Term, 2013

ISRAEL SWAREY, *et ux.*,

v.

KERRY STEPHENSON, *et al.*

Eyler, Deborah S.
Leahy,
Thieme, Raymond G., Jr.
  (Retired, specially assigned)

JJ.

Opinion by Leahy, J.

Filed: April 1, 2015

Israel and Linda Swarey ("the Swareys" or "Appellants") fell prey to purportedly false asseverations about investment opportunities in undercapitalized shell companies owned and operated by Todd B. Parriott, Phillip Parriott, and Kerry Stephenson ("Appellees"). The Swareys allege that in searching for secure sources of retirement income in 2008, they were induced by Appellees to invest substantial sums in real estate projects that never developed and companies that were either bankrupt, without assets, or had ceased to exist. Ultimately, the Swareys lost $3.7 million, including their home—a house that Mr. Swarey, once a builder by trade, had built himself.

On May 18, 2011, the Swareys filed a 21-count complaint in the Circuit Court for St. Mary's County, Maryland, alleging, *inter alia*, fraud, embezzlement, elder abuse, conspiracy to commit fraud, violations of the Consumer Protection Act, and violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 to 1968. The Swareys' complaint named six defendants in addition to the Appellees.[1]

Appellees Todd and Phillip Parriott removed the case to federal court on December 15, 2011. Upon removal, the Parriotts filed separate motions to dismiss for lack of personal jurisdiction, and Appellee Stephenson filed an answer to the complaint. The

---

[1] In addition to Appellees, the named defendants were: Desert Capital REIT, Inc.; Nick Andrews, individually and as owner or managing member of N. Andrews, LLC; N. Andrews, LLC, individually and as alter-ego of Nick Andrews; Sean Zausner, individually and as owner, manager, or officer of First Universal Lending, LLC; David Zausner, individually and as owner, manager, or officer of First Universal Lending, LLC; and David Feingold, individually and as owner, manager, or officer of First Universal Lending, LLC.

federal court dismissed the RICO claim and remanded the remaining state law claims back to the circuit court.

On remand, the circuit court determined that the defendants associated with First Universal Lending, LLC ("FUL")—Nicholas Andrews, N. Andrews LLC, Sean Zausner, David Zausner, and David Feingold (collectively referred to as the "FUL Defendants")— were never properly served with the complaint and summons under Maryland Rule 2-121. Those determinations by the circuit court were not appealed and are not properly before this Court. As discussed *infra*, an automatic bankruptcy stay barred pursuit of the claims against Desert Capital REIT, Inc. ("Desert Capital"), the only defendant that is a Maryland resident. The Swareys' Notice of Appeal limits itself to Appellees, and stems from three orders of the circuit court dismissing the complaints against all Appellees for lack of personal jurisdiction, and for insufficiency of service of process as to Appellee Stephenson.

The Swareys present the following issues in their briefing, which we have rephrased and combined for clarity:

I.  Did the circuit court err in concluding that Appellee Stephenson was not properly served, and therefore, must be dismissed from the action?

II. Did the circuit court err in granting the Appellees' motions to dismiss for lack of personal jurisdiction?

In view of the uncontested particulars that upon removal of the case to federal court, Appellee Stephenson was properly served with federal summons and answered the complaint, including all state law claims, we hold that he waived the defense of

2

insufficiency of service of process and was barred from raising it for the first time upon remand back to the circuit court. We also find the circuit court abused its discretion in failing to give the Swareys an opportunity to obtain responses to their discovery requests, specifically aimed at determining the quality and quantity of Appellees' contacts with Maryland for the purpose of long-arm jurisdiction, prior to granting Appellees' motions to dismiss. Accordingly, we reverse the judgments of the circuit court and remand for further proceedings.

## BACKGROUND[2]

In 2008, Mr. Swarey was 69 years old. Prompted by a television advertisement, Mr. Swarey attended a financial planning seminar on how to invest in real estate tax sales. During this seminar, Mr. Swarey spoke to a representative of Strategic Wealth Management about participating in some real estate development projects. Through this contact, Mr. Swarey was put in touch with the Appellees and their related entities: Desert Capital, Consolidated Mortgage LLC, and R&D Properties. Soon thereafter, the Swareys were contacted by First Universal Lending, LLC and encouraged to secure a $2,000,000.00 non-purchase money loan, secured by their primary residence (the "FUL loan"), for the purpose of making investments with Appellees.

---

[2]     Since this appeal arises from the grant of motions to dismiss, we review the relevant and materials facts "in the light most favorable to appellant[s]." *Ferguson v. Cramer,* 116 Md. App. 99, 103 (1997).

In March of 2008, and before the Swareys entered into the FUL loan, Mr. Swarey entered into a joint venture agreement and invested $440,000.00 in Pebble Creek JV, LLC ("Pebble Creek"). The Pebble Creek joint venture agreement was executed by Appellee Stephenson and sent to Mr. Swarey at his home address in Maryland, where Mr. Swarey signed the agreement on March 27, 2008.[3] The Swareys' $440,000.00 investment was wire-transferred to Pebble Creek from Mr. Swarey's personal account at Maryland Bank and Trust Company.

Pebble Creek was a subsidiary of R & D Properties, LLC, organized as a Nevada company and owned by Appellee Kerry Stephenson. The declared purpose of Pebble Creek was to purchase and develop 47 pre-identified residential lots in the Las Vegas area. Once acquired, the Swareys would take an income producing ownership interest in the real property. In their opposition to Appellee Todd Parriott's Motion to Dismiss, the Swareys provided numerous exhibits, including three letters from Appellee Stephenson sent to their Maryland home, advising them that development of the Pebble Creek community "continue[d] to move forward." By email, dated January 13, 2009, Appellee Stephenson assured his investors that the "community continues to move forward … [w]e have received all approvals on the engineering and archetechural [sic] plans for all the home

---

[3]. The joint venture agreements signed by Stephenson were not presented to the court on the motions to dismiss or in opposition thereto. They are a part of the record, however, as photocopies attached to an early motion for writ of attachment. Our review is not limited to the record on the motions, but rather, is based upon the entire record. *Himes Assocs., Ltd. v. Anderson*, 178 Md. App. 504, 525-26 (2008).

models and are ready to pull permits to begin the building process." But Pebble Creek never purchased or developed any property, and eventually the Swareys' $440,000.00 investment evaporated along with Pebble Creek JV, LLC when its status as a Nevada LLC was revoked.

Meanwhile, in May 2008, Mr. Swarey entered into a second joint venture agreement involving a different subsidiary of R & D Properties, LLC, owned by Appellee Stephenson. The Ann Road Industrial 007, LLC, joint venture agreement was executed by Stephenson and sent to Mr. Swarey at his home in Maryland, where he signed it on May 20, 2008. This time the Swareys invested a total of $1,150,000.00 in Ann Road Industrial 007, LLC. Again, the stated purpose of the venture was to purchase and develop real estate along Ann Road in Clark County, Nevada. However, as before, no land was purchased, the company's status as a Nevada LLC was revoked, and no accounting was ever made to the Swareys for their investment.

Around this time, the loan process initiated by lender FUL was delayed because Mrs. Swarey was undergoing surgery for her recently diagnosed Renal Cell Carcinoma. Undeterred by the Swareys' hardship, the FUL loan officer, defendant Nick Andrews, allegedly pursued the loan by meeting with Mr. Swarey near the hospital on the evening before Mrs. Swarey's surgery and threatening a lawsuit if the Swareys backed out of the deal. That night, Andrews sent the FUL settlement officer to obtain a signature from an ailing, semi-conscious Mrs. Swarey granting power of attorney to Mr. Swarey, and then

5

instructed him in executing the closing documents for the $2,000,000.00 loan. Mr. Swarey dutifully invested that $2,000,000.00 in the "Mid-Bar Property Project" through Appellee Todd Parriott and his Maryland investment company, Desert Capital. The Swareys were told their money would be used to purchase a certain parcel of land for construction of a high-rise condominium building. Correspondence regarding the Mid-Bar investment came through Consolidated Mortgage, LLC—the surviving entity from the merger of Appellee Phillip Parriott's Consolidated Mortgage Corporation in Nevada, with a South Dakota LLC of the same name. The Swareys allege Mid Bar was deliberately underfunded and designed to fail. When the Mid-Bar Project defaulted on the loans it received from Desert Capital, Desert Capital acquired the land in foreclosure at a greatly discounted value, and allegedly laundered away the lost equity. The land was then transferred to Mid Blue, LLC, another subsidiary of Appellee Phillip Parriott's Consolidated Mortgage, LLC. The Swareys were notified of this transfer by CM Capital Services, LLC, a subsidiary of Parriott's Delaware Company CM Group, LLC, owned by Appellee Todd Parriott.[4]

In 2009, Mr. Swarey telephoned and wrote Appellees repeatedly, trying to ascertain the state of the Swareys' $3.7 million investments. By the fall of that year, all communications from Appellees and their array of subsidiary entities ceased. On May 18,

---

[4] It bears noting that the alleged investment scheme involves no fewer than 18 inter-related business entities, owned by and between the Appellees Todd Parriott, Phillip Parriott, and Kerry Stephenson, and incorporated in four different states.

2011, the Swareys filed a complaint in the Circuit Court for St. Mary's County in the instant case.

Writs of summons were issued as to all of the defendants on August 12, 2011. On October 21 & 27, 2011, Appellees Phillip and Todd Parriott filed motions to dismiss for lack of personal jurisdiction and insufficiency of service of process. Following considerable difficulties, process was finally served on Appellees Todd Parriott and Phillip Parriott on November 20, 2011. Four days later, Desert Capital filed a Notice of Automatic Bankruptcy Stay pursuant to 11 U.S.C. § 362.

On December 15, 2011, the Swareys' case was removed to the United States District Court for the District of Maryland, Southern Division. Thereafter, Appellee Stephenson was served with a federal summons and a copy of the complaint. On February 1, 2012, he filed an answer and request for jury trial. In his answer, Stephenson raised as an affirmative defense that he had no dealings as an individual with the Swareys and therefore could not be sued in his personal capacity. Appellees Todd and Phillip Parriott filed separate motions to dismiss based on lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

In its September 20, 2012, Memorandum Opinion, the federal district court determined that the Swareys failed to state a RICO claim, because according to the complaint, the defendants' "purported actions were narrowly directed toward a single fraudulent goal: to swindle the Swarey's out of their life savings." "The alleged scheme

7

involved a single set of victims (the Swareys), and caused a single discrete injury (the Swareys' monetary loss)[.]"[5] Accordingly, the September 20, 2012, order of the district court dismissed the RICO count as to all defendants. With the only federal count dismissed, the district court declined to exercise supplemental subject matter jurisdiction over the remaining state law claims and remanded the case to the circuit court.[6]

From here, the Swareys' remaining claims disappeared almost as quickly as their life savings. On July 31, 2013, the Circuit Court for St. Mary's County granted: (1) Appellee Todd Parriott's Motion to Dismiss for Lack of Personal Jurisdiction; (2) Appellee Phillip Parriott's Motion to Dismiss for Lack of Personal Jurisdiction; and (3) Appellee

---

[5] Operation of the RICO statute requires a pattern of "continuing racketeering activity." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683-84 (4th Cir. 1989) (citing *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229 (1989)). "In providing a remedy of treble damages for injury by reason of a violation of RICO's substantive provisions, 18 U.S.C. § 1964(c), Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences." *Id.* at 683 (citing S. Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)) ("One isolated 'racketeering activity' was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense."). Where a plaintiff's allegations only concern actions by a defendant "narrowly directed towards a single fraudulent goal," the continuity prong of RICO's pattern requirement is not satisfied. *Id.* at 684.

[6] The court did not undertake an analysis of personal jurisdiction over the defendants under Maryland's long-arm statute because it decided the RICO statute provided a basis for exercising personal jurisdiction, making it permissible to assert pendent personal jurisdiction as to the Swareys' state law claims. After declining to exercise supplemental jurisdiction, however, the court observed in a footnote that: "[b]ecause the RICO count will be dismissed, there also will no longer be a basis for exercising pendent personal jurisdiction over the Parriott Defendants as to the state law claims, necessitating an analysis of personal jurisdiction under Maryland's long-arm statute."

Kerry Stephenson's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process.

Additional facts will be presented as they pertain to the discussion of each issue.

**DISCUSSION**

**I.**

**Appeal from a Final Judgment**

As a threshold matter, Appellees assert that no final judgment has been entered as to all nine named defendants in the suit and, therefore, this appeal must be dismissed under Maryland Rule 8-602(a)(1). We disagree.

"The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." Maryland Code (1973, 2013 Repl. Vol.), Courts & Judicial Proceedings Article ("CJP") § 12-301. An order or decision that "adjudicates fewer than all of the claims in an action . . . or that adjudicates the rights and liabilities of fewer than all the parties to the action is not a final judgment." Md. Rule 2-602(a)(1). A "'named defendant who has not been served is not a party for the purpose of determining a final judgment' and . . . , if the judgment entered by the court disposes of all claims against all persons over whom the court has acquired jurisdiction, the judgment is final without a certification under Rule 2-602(b).'" *Turner v. Kight*, 406 Md. 167, 172 n.3 (2008) (quoting *State Highway Admin. v. Kee*, 309 Md. 523, 529 (1987)). If the orders

9

issued by the circuit court resolve all claims against the parties over whom that court has acquired jurisdiction (i.e., all parties who were properly served), the judgment is final and appealable. *Higginbotham v. Pub. Serv. Comm'n of Maryland*, 171 Md. App. 254, 265 (2006). Thus, the Court of Appeals has made it plain that under Rule 2-602, this Court is not deprived of jurisdiction where unresolved claims remain solely against defendants who were not served.

Of the nine named defendants in this case, there is no dispute that process was served on Appellees Todd Parriott and Phillip Parriott. The circuit court determined that Stephenson was not properly served, although the parties contest this on appeal. The circuit court also determined that the five "FUL Defendants" were not properly served. The circuit court dismissed the claims against Appellees Todd Parriott, Phillip Parriott, and Kerry Stephenson in separate orders issued on July 31, 2013. Thus, the circuit court has reached a final decision regarding all defendants excluding Desert Capital. The pertinent inquiry is then whether process was served properly on Desert Capital.[7]

An affidavit by the Swareys' agent states that process was served on Desert Capital via certified mail on August 22, 2011. However, prior to that service, on April 29, 2011, Desert Capital became subject to involuntary Chapter 11 bankruptcy proceedings pursuant

---

[7] Neither the parties nor the circuit court address the issue of service of process on this corporation in any substantive manner.

to 11 U.S.C. § 303.   The commencement of the bankruptcy action triggered an automatic

stay under 11 U.S.C. § 362(a),[8] which provides, in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
>
> (1) the commencement or continuation, **including the issuance or employment of process**, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(Emphasis added).   As a result, if the cause of action underlying the Swareys' complaint

accrued at such a time as the action could have been commenced prior to April 29, 2011,

the service of process after that time was improper. *Id.*

Under the discovery rule, the causes of action stated in the underlying complaint

accrued when the Swareys became aware of the potential problems with their investments.[9]

---

[8]   The parties represent in their briefing that the bankruptcy stay is still in place.

[9]   Under the judicially-created "discovery rule," a cause of action accrues when the wrong is discovered or when with due diligence it should have been discovered.   *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584 (2013) (citing *Poffenberger v. Risser,* 290 Md. 631, 634 (1981)).   The alleged injury, however, may elude discovery for some time, as it is widely recognized that Ponzi schemes, similar to that alleged in the Swareys' complaint, "can maintain the illusion of a profit-making enterprise for years, and sophisticated investors may not be able to discover the fraud until long after its perpetration." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 377 (1991) (citing  American Bar Association, Report of the Task Force on Statute of Limitations for Implied Actions, 41 Bus. Lawyer 645, 656 (1985)).   Here, the record reflects that very little discovery was obtained from the parties prior to the circuit court's orders dismissing the claims, and the circuit court made no factual findings regarding the

Although the case was not sufficiently developed to answer exactly when this occurred, the record does establish that by 2009, the Swareys were actively trying to track down their lost investments.[10] Clearly the action could have been initiated prior to the commencement of the bankruptcy stay on April 29, 2011, entered just weeks before the instant case was filed. Consequently, the service of process on Desert Capital completed after April 29, 2011, was in violation of the § 362(a) stay.

Acts in violation of the automatic stay are generally determined to be void *ab initio*. *Kochhar v. Bansal*, ___ Md. App. ___, ___, No. 435 Sept. Term 2014, slip op. at 11 & n.3 (Md. Ct. Spec. App. Feb. 27, 2015) (citing *Dates v. Harbor Bank of Maryland*, 107 Md. App. 362, 370 (1995)). The prevailing view is that a state court lacks subject matter jurisdiction over a civil action commenced during the automatic stay. *Id.* The protection of the § 362 automatic stay has been deemed:

> one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. *It stops all collection efforts, all harassment, and all foreclosure actions.* It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

---

accrual date of the causes of action alleged in the complaint.

[10] The record contains various documents demonstrating that by mid-2009, the Swareys began to suspect there were problems with the investments they made with Appellees. For example, in an email from the Swareys to Appellee Stephenson dated April 16, 2009, the Swareys threaten that if Stephenson continues to ignore their attempts to contact him inquiring about their investments, they will have no choice but to call the banking and trade authorities.

12

*In re Schwartz,* 954 F.2d 569, 571 (9th Cir. 1992) (emphasis in original) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978)). The protection granted by the automatic stay has been viewed as so important and inclusive that once a creditor or other actor is put on notice of a debtor's bankruptcy filing, any actions intentionally taken thereafter, including service of process, in violation of automatic stay may be deemed willful stay violations, and may subject the creditor or other party to a damages award. *In re Kinsey*, 349 B.R. 48, 52 (Bankr. D. Idaho 2006); 11 U.S.C. § 362(h).

The circuit court correctly recognized the effect of the automatic stay on this case when it denied the Swareys' Amended Motion Requesting an Order of Default against defendant Desert Capital on the basis that the automatic stay had not been lifted. Where the circuit court found sufficient basis to conclude that the automatic stay operated to bar the "commencement or continuation … [of an] action or proceeding against the debtor," the same basis must bar the "issuance or employment of process" in that action. 11 U.S.C. § 362(a)(1). Accordingly, the issuance and service of process on Desert Capital after the effective date of the automatic stay was barred by 11 U.S.C. § 362(a)(1). Therefore, Desert Capital is not a served defendant and the court had not yet acquired jurisdiction over it. No judgment regarding Desert Capital is necessary for a final judgment in this case. Where final judgment has been entered as to each of the properly served, or in the case of Appellee Stephenson, allegedly served, parties, this Court may review the merits of the case. *Kee*, 309 Md. at 529.

13

## II.

### Service on Appellee Stephenson

After the case was remanded to the circuit court, Stephenson filed the underlying motion to dismiss pursuant to Maryland Rule 2-322(a) on December 12, 2012. In his motion to dismiss, Stephenson argued that (1) he was not properly served with state court process; (2) he had never filed an answer in a Maryland court; and (3) because the Supreme Court has left it to the states to decide what effect to give federal pleadings on remand, and the Maryland courts had yet to address the issue specifically, the circuit court should decline to exercise jurisdiction predicated on the federal service.

In its July 31, 2013, Order dismissing the complaint as to Defendant Kerry Stephenson, the court stated:

> [T]his Court finds that the [Appellee] Kerry Stephenson was not properly served with the Complaint and Maryland State Court Summons pursuant to Maryland Rule 2-121. The Court finds that the service of federal pleadings while the matter was pending in the U.S. District Court and the filing of an answer in the same, does not require the state trial court to accept the federal pleadings on remand. *Ayres v. Wiswall*, 112 U.S. 187, 190 (1884) (Court held that the effect given to Federal pleadings is one for the state court to determine after remand). *See Edward Hanson, Inc. v. Kearny Post Office Associates* 166 N.J. Supr. 161, 399 A.2d 319 (1979) and *Metropolitan Cas. Ins. Co. v. Stevens*, 61 S. Ct. 715, 718, 312 U.S. 563, 569 (1941).

The circuit court did not address the Swareys' contention, raised in their response to Stephenson's motion, that the failure to assert the defense of insufficient service of process prior to answering the complaint in the federal district court constituted a waiver of that defense in the state court.

14

On appeal the Swareys assert the circuit court erred in granting Appellee Stephenson's motion to dismiss for insufficiency of service of process because he waived the defense, and in any case, he was served with process on three separate occasions. They contend that a state court summons and a copy of the complaint were served on Stephenson on August 16, 2011 via certified mail. Then again, "in an abundance of caution," a new writ of summons was issued in November 2011, and the documents were delivered to Stephenson's wife at their primary residence on November 27, 2011.

Appellee Stephenson asserts that the Swareys failed to comply with the rules governing service of process in Maryland,[11] but he does not dispute that after the case was

---

[11] The Swareys' never presented the court with a copy of the original return receipt to support their contention that they served Stephenson by certified mail. The record contains a certified mail transaction receipt for the pre-delivery, but it lists a cost of $0.00 for the restricted delivery fee. Maryland Rule 2-121(a)(3) requires for valid service, certified mail must be sent requesting restricted delivery.

In regard to Swareys' contention that Stephenson was served by delivery of summons to his wife at their home on November 27, 2011, Stephenson argues that this service was invalid because the date of notarization conflicts with the date of service as set forth in the Affidavit of Service. The Notary states the affidavit was signed before her on December 13, 2011, but the affiant, Mr. McGrue, wrote on the affidavit that the summons and complaint were served on "11/27/2012." The Swareys contend that this is a simple typographical error, and that Mr. McGrue mistakenly wrote 2012 instead of 2011.

Stephenson presented no evidence that the complaint and summons were not served on Ms. Stephenson on November 27, 2011. In fact, Stephenson never alleged in the motions filed in the circuit court that the summons and complaint were not delivered as attested in the Affidavit of Service. He merely pointed out the error on the affidavit and argued that the erroneous date on the affidavit rendered it invalid. We recently addressed the issue of proper in personam service in *Wilson v. Maryland Department of Environment*. Judge Graeff, writing for this Court, stated: "A proper return of service is *prima facie* evidence of valid service of process" and that although the presumption of validity can be rebutted, "a mere denial of service is not sufficient[.]" 217 Md. App. 271, 285 (2014) (citing

removed to federal court on December 20, 2011, he was properly served with a federal summons and a copy of the complaint. Appellee Stephenson argues, however, that because the RICO claim was dismissed and the remaining claims were remanded, the State is not able to exercise jurisdiction over his person without proper service in state court.

In its order granting Appellees' motion to dismiss set out above, the circuit court decided, without stating a reason, Stephenson was not properly served with the state court summons pursuant to Maryland Rule 2-121. We apply an 'abuse of discretion' standard of review as to whether the circuit court erred in granting the motion to dismiss for insufficiency of process, *Hariri v. Dahne,* 412 Md. 674, 686 (2010); however, we need not resolve the issues raised on appeal regarding the state court summons. We are satisfied that the requirements for service of process and notice in this case were met after it was removed to federal court, and that Appellee Stephenson is barred from raising the defense of insufficiency of service of process after having answered the complaint.

---

*Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 84 (2001). In *Chapman v. State*, the Court of Appeals stated: "we conclude that the obvious single typographical error in the affidavit does not undermine the reliability of its otherwise trustworthy hearsay." 331 Md. 448, 474 (1993). It is not clear how the circuit court concluded there was no valid service, especially where Stephenson produced no conflicting affidavit or other evidence showing that the summons and complaint were not properly served on November 27, 2011, *cf. Chapman*, 331 Md. 448, but again, we need not review the court's decision under our holding.

**Disposition of Federal Pleadings on Remand**

In *Ayres v. Wiswall*, the Supreme Court briefly examined the appropriateness of adopting pleadings and other papers filed in a federal case in a state action upon remand, and stated:

> It will be for the state court, when the case gets back there, to determine what shall be done with pleadings filed and testimony taken during the pendency of the suit in the other jurisdiction.

112 U.S. 187, 189-91 (1884).   Thus, it is for the courts of Maryland to decide what weight to accord to Stephenson's receipt of service of process and his responsive answer to the complaint.   Specifically, we must determine whether a defendant may move on remand to state court, pursuant to Maryland Rule 2-322(a), to dismiss for insufficiency of service of process where a federal court summons was properly served on the defendant and where the defendant filed an answer to the complaint prior to remand.   This precise issue has not been decided by the courts of Maryland and has seldom been addressed in other jurisdictions.[12]

"To determine whether notice in a particular case is constitutionally sufficient, the court 'must balance the interests of the state or the giver of notice against the individual

---

[12]   There are, however, reported cases in Maryland in which, after remand from the federal court, it is implied but not stated that pleadings filed or amended in federal court are given full effect.   *See*, *e.g.*, *MBC Realty, LLC v. Mayor & City Council of Baltimore,* 403 Md. 216 (2008) (on remand proceeding on complaint that was amended while in federal court); *Okwa v. Harper*, 360 Md. 161 (2000) (on remand proceeding with case in which at least one party filed answer to complaint while the case was in federal court).

interest sought to be protected by the fourteenth amendment.'" *Miserandino v. Resort Props., Inc.*, 345 Md. 43, 53 (1997) (quoting *Golden Sands Club Condo., Inc. v. Waller*, 313 Md. 484, 496 (1988)). "At a minimum, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The federal removal statute does not directly address the problem presented here. Although 28 U.S.C. § 1447(b) provides that the district court may require the party petitioning for removal to file copies of the state court record with the clerk of the federal court, it does not expressly require a similar procedure upon remand. However, it is abundantly clear that cases do proceed in the state court following remand from the federal district court. *See, e.g., Okwa v. Harper*, 360 Md. 161, 173 n.6 (2000). Moreover, during the period of removal to federal court and prior to remand, additional pleadings and papers may be filed, and additional defendants may be served. 28 U.S.C. § 1448 provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Pursuant to 28 U.S.C. § 1367, a federal district court may exercise supplemental jurisdiction over state law claims sufficiently related to a claim over which the district court has subject matter jurisdiction. *White v. Cnty. of Newberry, S.C.,* 985 F.2d 168, 172 (4th

Cir. 1993) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)). However, as demonstrated by what happened in the case *sub judice,* the federal court has the discretion to decline to exercise supplementary jurisdiction over remaining state law claims when it has disposed of all federal law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Where the district court declines to exercise supplemental jurisdiction, the case may be remanded to the state court from which it was removed. *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)) ("Because [28 U.S.C. § 1367] is silent about how a district court declines to exercise supplemental jurisdiction, the principles inherent in supplemental jurisdiction, or pendent jurisdiction, as articulated by *Carnegie–Mellon,* continue to apply. As the Court in *Carnegie–Mellon* observed, a court may dismiss the claim or, if it was removed, remand it to State court."). Thus, the federal removal framework contemplates that a case will continue to progress in the district court, and in the event of remand, will continue to proceed efficiently in state court. As noted above, however, the Supreme Court has left it to the states to decide the precise use and effect of pleadings and papers filed in the other jurisdiction.

Over the last half-century, other state courts presented with this issue have routinely chosen to give full effect to pleadings filed in federal court prior to a remand to state court. *See, e.g.*, *Teamsters Local 515 v. Roadbuilders, Inc.*, 291 S.E.2d 698, 701 (Ga. 1982) (holding that a timely answer filed in district court following timely removal of the action

19

is sufficient to prevent a default in a state court if the case is subsequently remanded by the district court); *Williams v. St. Joe Minerals Corp.*, 639 S.W.2d 192, 194–95 (Mo. Ct. App. 1982) (holding that the amended complaint filed in federal court was properly before state court on remand even absent refiling); *Armentor v. Gen. Motors Corp.*, 399 So.2d 811, 812 (La. Ct. App. 1981) (treating an answer filed in federal court as if filed in state court for purposes of ruling on "exceptions of venue"); *Edward Hansen, Inc. v. Kearny P.O. Assoc.*, 399 A.2d 319, 323 (N.J. Sup. Ct. 1979) (adopting the pleadings filed in federal court "as if they had been originally filed in [state] court")*; Shelton v. Bowman Transp., Inc.* 230 S.E.2d 762, 764 (Ga. Ct. App. 1976) (holding that the trial court acted within its discretion in relieving from default a defendant who had filed an answer in federal court before remand); *Citizens Nat. Bank, Grant City v. First Nat. Bank, Masion*, 331 N.E.2d 471, 476–77 (Ind. Ct. App. 1975) (holding that following remand, the state court appropriately ruled on a motion to dismiss filed in federal court and therefore defendants were not in default); *Bolden v. Brazile*, 172 So.2d 304, 310 (La. Ct. App. 1965) (treating answer and motion to dismiss filed in federal court as a form of responsive pleading upon remand to state court); *Grone v. N. Ins. Co. of New York*, 130 A.2d 452, 453 (Pa. 1957) (holding that after removal to federal court "when, a year and a half later, the case was remanded to the State Court, the answers to the complaint, which had been duly filed in the Federal Court, were a part of the record upon its return to the State Court.").

20

In *Banks v. Allstate Indemnity Co.*, the Court of Appeals of Ohio, Ninth District, favoring substance over procedural form, held that, as a matter of first impression, the state trial court, on remand, should have given effect to the answer filed in federal district court. 757 N.E.2d 776, 777-78 (Ohio Ct. App. 2001). That court observed:

> [T]he primary objective and function of our courts is to adjudicate cases on the merits by applying the substantive law whenever possible, and not to adjudicate cases with finality upon a strained construction of procedural law yielding unjust results.

*Id.* at 777 (quoting *Svoboda v. Brunswick*, 453 N.E.2d 648, 651 (Ohio 1983)). In the absence of rules within our jurisdiction governing the effect of federal pleadings upon remand to state court, we too turn to the policy considerations underlying Maryland's summons and notice requirements.

**Maryland Rule is Consonant with the Federal Rule**

In the federal courts, service of process is generally governed by Federal Rule of Civil Procedure 4, which provides in pertinent parts:

> (c)(1) A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.
> * * *
>
> (e) Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;
(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

The requirements for state court service of process, under Maryland Rule 2-121, mirror the federal requirements with the addition of a provision for service by certified mail. Md. Rule 2-121(a)(3). Pursuant to Fed. R. Civ. P. 4(e)(1), service in the Federal District Court for the District of Maryland may also be achieved through certified mail pursuant to Rule 1-121(a)(3) as a method "following state law . . . in the state where the district court is located or where service is made[.]"[13] *See, e.g., Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 653 (D. Md. 1986). Thus, the rules governing in personam service of process on an individual in the courts of Maryland, either state or federal, authorize using the same mechanisms to achieve proper service of a summons and complaint.

---

[13]    In 1982, the Supreme Court forwarded to Congress a proposed revision of Federal Rule of Civil Procedure 4 allowing the utilization of restricted delivery registered or certified mail as an alternative to personal service even without a state rule allowing service by mail. *Miserandino*, 345 Md. at 60 (citing *Brown v. Hart*, 96 F.R.D. 64, 116–135 (N.D.Ill.1982)). Thereafter, Fed. R. Civ. P. Rule 4(c) was amended effective February 26, 1983, to authorize service of process by first-class mail. That service by mail provision was abolished in a 1993 revision and replaced with a waiver provision. Fed. R. Civ. P. 4, Notes of Advisory Committee on Rules—1993 Amendment. However, service by mail remains proper where it is utilized as a method "following state law … in the state where the district court is located" pursuant to Fed. R. Civ. P. 4(e)(1).

**Service in Federal Court Meets State Notice Requirements**

The Due Process Clause of the Fourteenth Amendment "at a minimum ... require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane, supra,* 339 U.S. at 313. Further, Article 24 of the Maryland Declaration of Rights, which has been interpreted to guarantee due process for the people of Maryland, has also been interpreted as requiring that a defendant be given adequate notice before a claim against him may proceed. *See, e.g., Pickett v. Sears, Roebuck & Co.*, 365 Md. 67, 71 (2001). However, no particular procedure for notice through service of process is constitutionally required in all cases. *Miserandino*, 345 Md. at 52-53. "On the contrary, due process is flexible and calls only for such procedural protections as the particular situation demands. Procedures adequate under one set of facts may not be sufficient in a different situation." *Dep't of Transp. v. Armacost,* 299 Md. 392, 416 (1984) (citations omitted). When determining whether notice is constitutionally sufficient, the court "must balance the interests of the state or the giver of notice against the individual interest sought to be protected by the fourteenth amendment." *Miserandino*, 345 Md. at 52 (quoting *Golden Sands Club v. Waller,* 313 Md. 484, 496 (1988)).

In *Miserandino v. Resort Properties, Inc.*, the Court of Appeals quoted the Restatement (Second) of Conflict of Laws § 25 cmt. d. (1971), stating:

> What is a sufficient method of notification depends upon the nature of the action and the circumstances. The interests to be considered are, on the one

23

> hand, those of the state and of the plaintiff in bringing the issues involved to a final settlement and, on the other hand, those of the defendant in being afforded an opportunity to defend. The practicalities of the situation must be considered. A state is not precluded from exercising such judicial jurisdiction as it may possess by the fact that under the circumstances it is impossible to make certain that notice will reach the defendant or because the only sure way of giving notice to the defendant would be so burdensome and expensive as to be impracticable.

*Miserandino*, 345 Md. at 54 (citation omitted).

The nature of the action and the circumstances of the case before us; namely, a single case containing state and federal claims that was removed and remanded from state to federal court and back, entreat us to presume that all service of process and all pleadings filed *in the case* should be recognized as valid, regardless of whether the pleadings were filed or the process was served in state or federal court. Certainly, service under the federal rules, of the very same complaint that was filed in state court prior to removal, satisfies the requirements of due process. *See generally State v. Hess Corp.*, 982 A.2d 388, 392-96 (N.H. 2009); *Hansen, supra,* 399 A.2d at 322–23. Here, as in *Hess Corp.* and *Hansen,* there is nothing to suggest that Appellee Stephenson would be deprived of his right to notice and an opportunity to be heard if service under the federal rules is deemed sufficient to bring him before the state court.

In 2009, the Supreme Court of New Hampshire in *State v. Hess Corporation* held that an amended complaint filed in federal court remained viable in state court after remand and that service on a defendant in federal court was proper for purposes of state law. 982 A.2d at 395. There, even though federal service did not strictly comport with the state

24

statutes governing service of process, the court found that the defendants were not deprived of their right to notice and an opportunity to be heard. *Id.* at 396. Requiring re-service, the court held, would have conflicted with the policy of deciding cases on their merits, and of favoring substance over procedural form. *Id.* The Supreme Court of New Hampshire stated: "[w]hile we recognize that, generally, we have required strict compliance with New Hampshire's statutory requirements for service of process to obtain jurisdiction over a defendant, we find competing policy considerations more compelling under the unique circumstances of this case." *Id.* at 778-79 (internal citation omitted).

Requiring re-service upon remand to the state court, in this case, would unnecessarily favor procedural form over substance, where there is no readily discernable prejudice to Appellee Stephenson. Service in the federal court satisfies the requirements of due process, affords the same procedures and protections as service under the Maryland Rules, and provided Stephenson with adequate notice and opportunity to defend. Stephenson does not dispute that he was properly served pursuant to the Federal Rules of Civil Procedure with the same complaint while the case was pending in federal court. Therefore, we hold that service of the federal court summons and a copy of the complaint that was filed in state court prior to removal was sufficient to bring Appellee Stephenson properly before the state court on remand.

**Maryland Rule 2–322(a)**

The record demonstrates that during the seven months prior to removal, Stephenson failed to respond to any papers and pleadings filed in the state court.[14]   Following removal, however, on February 1, 2012, Stephenson filed an answer to the Swareys' complaint in federal district court—the same complaint that was filed in state court.   He also filed an amended answer on February 23, 2012.   In his answers, Stephenson responded to all state law and federal claims, and did not assert insufficiency of service of process as a defense. Only after the case was remanded to the state court (and well after Stephenson had filed his answers to the Swareys' complaint) did he file a motion to dismiss for lack of personal jurisdiction and insufficiency of service of process pursuant to Maryland Rule 2-322 on December 12, 2012.   Maryland Rule 2–322(a), provides:

> (a) **Mandatory**. The following defenses shall be made by motion to dismiss **filed before the answer**, if an answer is required: (1) lack of jurisdiction over the person, (2) improper venue, (3) insufficiency of process, and **(4) insufficiency of service of process**. **If not so made and the answer is filed, these defenses are waived**.

(Emphasis supplied). Similarly, Federal Rule of Civil Procedure 12(b) provides, in pertinent part:

> (b) Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

---

[14]  The pleadings to which Stephenson failed to respond included: the complaint; two motions for writ of attachment before judgment (dated May 18, 2011 and October 5, 2011); an October 20, 2011, Motion Requesting Order of Default; and an October 24, 2011, Amended Motion requesting Order of Default.

26

* * *

(2) lack of personal jurisdiction;

* * *

(5) insufficient service of process;

* * *

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

Both Maryland Rule 2-322 and Federal Rule of Civil Procedure 12(b) require that defenses asserting the lack of personal jurisdiction and insufficiency of service of process must be raised through preliminary motion prior to the defendant's answer or, under the federal rule, as part of the answer. The purpose of Rule 2–322(a) is to have the legal question decided before the trial of the action on its merits. *Irvine v. Montgomery Cnty.,* 239 Md. 113, 117 (1965). In the instant case, Stephenson answered the complaint, including all state law claims, and the federal court could have addressed those claims had it exercised supplemental jurisdiction. Had the court exercised supplemental jurisdiction, the federal court would have applied Maryland law to the state law claims. We find Appellee Stephenson's contention that giving effect to the answer filed in the U.S. District Court would be fundamentally unfair because it was filed in a different court with different rules to be without merit here. Accordingly, Stephenson is deemed to have waived the defense of insufficient service of process by not raising it either prior to or in his answer to the Swareys' complaint filed in federal court. Md. Rule 2-322; Fed. R. Civ. P. 12(b).

27

### III.

### Personal Jurisdiction

"The applicable standard of appellate review of the grant of a motion to dismiss for lack of personal jurisdiction is whether the trial court was legally correct[.]" *Bond v. Messerman*, 391 Md. 706, 718 (2006); *accord Kortobi v. Kass*, 410 Md. 168, 175 (2009).

**Appellee Stephenson Did Not Waive Defense**

As a preliminary matter, we find that although Maryland Rule 2-322(a) requires that mandatory defenses be filed before filing an answer, Appellee Stephenson did not waive the defense of lack of personal jurisdiction because he raised it as an affirmative defense in the answer he filed in federal court.[15] Upon removal to federal court, Stephenson was required to adhere to federal procedure and, accordingly, he was permitted to file an answer raising lack of personal jurisdiction under Federal Rule 12(b)(2). *See, e.g., M. Lowenstein & Sons, Inc. v. Austin*, 430 F. Supp. 844, 845 (S.D.N.Y. 1977) ("Rule 12(b), Fed. R. Civ. P., indicates that each of these [12(b)] defenses may be raised by motion. However, Rule 12(h)(1), which governs waiver of these defenses, indicates that they are preserved as long as they are contained in the responsive pleading or raised in the first prepleading motion. Since the defenses are contained in defendant's answer, they are not waived.").

---

[15] In his answer, Appellee Stephenson also responded "denied" to allegations contained in the complaint that the court had personal jurisdiction over him pursuant based on his conduct and contacts in Maryland.

When the case was remanded to state court, Stephenson filed the underlying motion to dismiss pursuant to Maryland Rule 2-322(a). Again, a paucity of cases have addressed this exact issue, but we find the Court of Appeal of Louisiana best articulated the logical tenet: "[a] party who properly avails himself of [Federal Rule 12(b) as a] procedural device while his case is pending in federal court should not be penalized upon remand to the state court because of procedural pleading differences between state and federal courts." *de Reyes v. Marine Mgmt. & Consulting, Ltd.,* 544 So. 2d 1259, 1260 (La. Ct. App.), *writ denied sub nom. deReyes v. Marine Mgmt. & Consulting, Ltd.*, 548 So. 2d 1249 (La. 1989). We hold that because Stephenson's answer in federal court raised the defense of lack of personal jurisdiction, he was permitted to re-assert that defense upon remand pursuant to Maryland Rule 2-322(a).

**Minimum Contacts with Maryland**

Appellees each contend they lacked sufficient contacts with Maryland to allow the courts of Maryland to have personal jurisdiction over them as a non-residents of the State. Stephenson avers, *inter alia,* that he is a resident of Nevada, that he does not own any real estate or conduct any type of business in Maryland, that he has not advertised or contracted to provide goods or services in Maryland, and that he has had no contact with the Swareys in Maryland.

Appellee Todd Parriott contends, *inter alia*, that "he has not personally transacted or solicited any business from, or performed any character or work or service for, any

individual or entity in Maryland," although he admits he was a former officer of a Maryland corporation that he says did not conduct business in Maryland. He claims he has not advertised or furnished marketing materials in Maryland, has not caused any tortious injury in Maryland, and has "not received any revenue from goods and/or services from within Maryland." Appellee Phillip Parriott's contentions are different. He avers, *inter alia*, that that he does not reside in Maryland, never maintained a mailing address in Maryland, does not have any interest in any trust administered in Maryland, and "does not personally transact or solicit any business from, or perform any character of work or service for, any individual or entity in Maryland."

The Swareys aver in their complaint that Stephenson purposefully availed himself of Maryland's laws by advertising financial products in Maryland; contracting to provide financial services and retirement planning to the Swareys in Maryland; collecting money from the Swareys in Maryland; and committing a tortious injury and making fraudulent misrepresentations and/or omissions to the Swareys in Maryland. Regarding the Parriotts, the Swareys aver in their complaint that the Appellees contracted with the Swareys to provide financial advice and retirement planning in Maryland; received substantial revenue from services provided within Maryland; and knowingly and intentionally engaged in a continuing scheme for the purpose of defrauding Maryland residents out of their life savings. On April 5, 2013, the Swareys requested—as part of their oppositions to

30

Appellees' motions to dismiss—that the court allow additional discovery regarding the Appellees' contacts with Maryland.

In determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant, we must evaluate the dual considerations of whether the exercise of jurisdiction is (1) authorized under Maryland's Long-Arm Statute and (2) comports with the due process requirements of the Fourteenth Amendment. *Kortobi v. Kass*, 410 Md. 168, 184-85 (2009).

Maryland's long-arm statute is found in CJP § 6-103 and provides:

**In general**
(a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

**Business transactions or injuries in State**
(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
    (1) Transacts any business or performs any character of work or service in the State;
    (2) Contracts to supply goods, food, services, or manufactured products in the State;
    (3) Causes tortious injury in the State by an act or omission in the State;
    (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
    (5) Has an interest in, uses, or possesses real property in the State; or
    (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

31

**Definitions**

(c)(1)  (i) In this subsection the following terms have the meanings indicated.

(ii) "Computer information" has the meaning stated in § 22-102 of the Commercial Law Article.

(iii) "Computer program" has the meaning stated in § 22-102 of the Commercial Law Article.

(2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.

"Only one provision of the statute need be satisfied in order to assert jurisdiction." *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md. App. 559, 568 (1993) (citing *Tate v. Blue Cross of Washington & Alaska,* 59 Md. App. 206, 217 (1984)). The Court of Appeals has "consistently held that the purview of the long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 15 (2005) (citing *Mohamed v. Michael,* 279 Md. 653, 657 (1977); *Geelhoed v. Jensen,* 277 Md. 220, 224 (1976); *Lamprecht v. Piper Aircraft Corp.,* 262 Md. 126, 130 (1971)).

The Due Process Clause requires that in order to establish jurisdiction over a defendant who is not present in the state, the defendant must have "minimum contacts" with Maryland, such that the exercise of personal jurisdiction in Maryland "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). The nature of the defendant's contacts with Maryland are important, but we also must consider "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner,*

433 U.S. 186 (1977), to determine whether the defendant "should reasonably anticipate being haled into court" in Maryland. *Kortobi*, 410 Md. at 185 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within [Maryland], thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co.,* 326 U.S. at 319).

Two forms of jurisdiction may arise under the minimum contacts analysis: general jurisdiction and specific jurisdiction. This Court succinctly explained the difference between the two in *Himes Associates, Ltd. v. Anderson*:

> If the defendant's contacts with the forum state do not form the basis for the plaintiff's suit, then personal jurisdiction, if it exists, "must arise from the defendant's general, more persistent contacts with the State." *Beyond Systems, supra,* 388 Md. at 22, 878 A.2d 567. To establish "general jurisdiction," the defendant's activities in the state must be shown to have been "'continuous and systematic.' " *Id.* at 22–23, 878 A.2d 567 (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 397 (4th Cir.2003)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "If the defendant's contacts with the forum state form the basis for the suit, however, [the plaintiff] may establish 'specific jurisdiction [over the defendant].'" *Beyond Systems, supra,* 388 Md. at 26, 878 A.2d 567 (quoting *Carefirst, supra,* 334 F.3d at 397). In deciding the existence *vel non* of specific jurisdiction, a court should consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Beyond Systems, supra,* 388 Md. at 26, 878 A.2d 567 (quoting *Carefirst, supra,* 334 F.3d at 397).

178 Md. App. 504, 527-28 (2008). "The concept of specific and general jurisdiction is a useful tool in the sometimes difficult task of detecting how much contact is enough, and most cases will fit nicely into one category or the other." *Camelback Ski Corp. v. Behning*, 312 Md. 330, 339 (1988). But if "the facts of a given case do not naturally place it at either end of the spectrum," the Court of Appeals has explained that the proper approach is not to "force-fit" the case, but "to identify the approximate position of the case on the continuum that exists between the two extremes, and apply the corresponding standard, recognizing that the quantum of required contacts increases as the nexus between the contacts and the cause of action decreases." *Id.*

"[T]he quality and quantity of contacts required to support the exercise of personal jurisdiction will depend upon the nature of the action brought and the nexus of the contacts to the subject matter of the action." *Id.* at 338. Where neither the defendant nor his agent has physically entered the state, the court may look to other relevant contacts. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). In such a case, "telephone calls and correspondence with the plaintiff in the forum state" alone are insufficient to establish a substantial connection. *Bond v. Messerman,* 391 Md. 706, 723–24 (2006) (citing *Cape v. Maur,* 932 F. Supp. 124, 128 (D. Md. 1996)). When, however, the defendant has maintained a set of "continuing obligations" between himself and a resident of the forum state, he has "'availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is

34

presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'" *Sleph v. Radtke,* 76 Md. App. 418, 428–29 (1988) (quoting *Burger King, supra,* 471 U.S. at 476).

In *Sleph v. Radtke*, for example, this Court held that Virginia residents who executed a purchase money mortgage in favor of a Maryland mortgagee as part of an investment in Maryland property were subject to personal jurisdiction in Maryland. 76 Md. App. at 429-30. We explained that "[t]he requirements of due process are satisfied if the suit is based on a contract which has a substantial connection with the forum State." *Id.* at 428. Although the nonresident-defendants executed the mortgage in Virginia, we nevertheless deemed them to have established minimum contacts with Maryland "by creating a 'continuing obligation' between themselves and a Maryland resident which invoked the benefits and protections of Maryland law."[16] *Id.* at 429. We also concluded that they "transacted business" in this State within the meaning of subsection (b)(1) of Maryland's long-arm statute because their actions culminated in "purposeful activity" within Maryland. *Id.* at 427-28. *See also McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957) (holding that the exercise of specific jurisdiction is proper when the disputed insurance contract has a substantial connection with residents of the state); *Mohamed v. Michael,* 279 Md. 653, 659, 370 (1977) (holding that defendant's agents' negotiations in Maryland with

---

[16] We later characterized this holding as concluding that specific jurisdiction existed when the suit was based on a contract substantially connected to Maryland. *Himes Assocs., Ltd.,* 178 Md. App. at 528.

plaintiff to reach a settlement on a contract dispute were of sufficient duration and quality to satisfy 'transaction of business' requirement of long-arm statute and due process requirement that defendant have 'minimum contacts' with the state before personal jurisdiction can be exercised over him); *Snyder v. Hampton Indus., Inc.,* 521 F. Supp. 130, 141 (D. Md. 1981) (stating that because subsection (b)(1) of the Maryland long arm statute is indeed coextensive with the Due Process Clause, a nonresident can reasonably be held to have transacted business in Maryland although never physically present in the state).

The Supreme Court has also upheld the exercise of specific jurisdiction over defendants who have "purposefully reached out beyond their State and into another by . . . entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State." *Walden*, 134 S. Ct. at 1122 (citing *Burger King Corp. v. Rudzewicz,* 472 U.S. 462, 479–80 (1985)). A similar rationale has been employed outside the realm of contractual disputes. For example, the Supreme Court in *Keeton v. Hustler Magazine, Inc.*, found that circulating magazines to "deliberately exploi[t]" a market in the forum state supported the state court's exercise of long-arm jurisdiction. 465 U.S. 770, 781 (1984). Additionally, "physical entry into the State—either by the defendant in person or through an agent, goods, **mail, or some other means**—is certainly a relevant contact." *Walden v. Fiore*, 134 S. Ct. at 1122 (emphasis added) (citing *Keeton,* 465 U.S. at 773–74).

The burden rests with the Swareys to "at least mak[e] a *prima facie* showing of, the jurisdictional facts to show that the individual defendants regularly do or solicit business

36

in Maryland, engage in another persistent course of conduct in the state, or derive substantial revenue from goods, services or manufactured products used or consumed in the state." *Quinn v. Bowmar Pub. Co.*, 445 F. Supp. 780, 786 (D. Md. 1978) (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974); *see also Holfield v. Power Chem. Co.*, 382 F. Supp. 388 (D. Md. 1974)). However, because courts have recognized that a personal jurisdiction analysis is necessarily fact-specific, discovery should be permitted where the court's determination would otherwise rest upon a meager record. *Quinn*, 445 F. Supp. at 638-39. Indeed, "[w]hen a motion to dismiss is based upon lack of jurisdiction, the court can consider affidavits or hold an evidentiary hearing on the motion to dismiss without converting the motion into a motion for summary judgment." *Evans v. Cnty. Council of Prince George's*, 185 Md. App. 251, 256 (2009) (citing *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 11-12 (2005)). Therefore, where the Swareys seek discovery "specifically aimed at the contact which the defendant has with this State," and the "[d]etermination of quality and quantity of those contacts [is] essential to the court's proper conclusion as to whether defendant [is] subject to the long arm jurisdiction of the court," preventing them from discovering those facts is an abuse of discretion. *Androutsos v. Fairfax Hospital*, 323 Md. 634, 639-40 (1991).

The record before us contains numerous exhibits submitted by the Swareys. Certainly, they tend to establish *prima facie* that: (1) the Appellees maintained long-term business relationships with Maryland residents and entities; (2) Appellees' solicitations

37

resulted in the Swareys sending approximately $3,700,000.00 to the out-of-state Appellees via checks and wire transfers; (3) Appellees regularly communicated with the Swareys in Maryland by mail, e-mail, and telephone; (4) Appellees sent emails to parties in Maryland soliciting investment business; (5) and Stephenson sent joint venture agreements to the Swareys to be executed in Maryland. The record also provides glimpses of other material that may have been available to the court had discovery been conducted prior to the court's ruling.

The circuit court should have allowed discovery on the factual issues raised before any ruling was made on the motion to dismiss for lack of personal jurisdiction. *Androutsos*, 323 Md. at 639 (citing *Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 351 n.13 (1978)). Accordingly, we remand and instruct the circuit court to allow the parties to conduct discovery on the specific issue of the full extent of Appellees' connections to Maryland, and for further proceedings consistent with this opinion.

**JULY 31, 2013 ORDER OF THE CIRCUIT COURT AS TO APPELLEE TODD PARRIOT VACATED; JULY 31, 2013 ORDER OF THE CIRCUIT COURT AS TO APPELLEE PHILLIP PARRIOTT VACATED; JULY 31, 2013 ORDER OF THE CIRCUIT COURT AS TO APPELLEE STEPHENSON VACATED IN PART AND REVERSED AS TO INSUFFICIENCY OF SERVICE OF PROCESS. CASE REMANDED. COSTS TO BE PAID BY APPELLEES.**